[Cite as *Blessing v. Blessing*, 2017-Ohio-2878.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| DARYL A. BLESSING | : | |
| | : | |
| *Plaintiff-Appellee* | : | Appellate Case No. 27353 |
| | : | |
| v. | : | Trial Court Case No. 2014-DR-762 |
| | : | |
| DEBRA M. BLESSING | : | (Domestic Relations Appeal) |
| | : | |
| *Defendant-Appellant* | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 19th day of May, 2017.

. . . . . . . . . . .

DARYL A. BLESSING, 3525 Lenox Drive, Kettering, Ohio 45429
        Plaintiff-Appellee-Pro Se

CHARLES D. LOWE, Atty. Reg. No. 0033209, 8087 Washington Village Drive, Suite 102, Dayton, Ohio 45458
        Attorney for Defendant-Appellant

. . . . . . . . . . . .

TUCKER, J.

{¶ 1} Debra Ford (formerly known as Blessing) appeals from a judgment of the Montgomery County Court of Common Pleas, Domestic Relations Division, which terminated a shared parenting plan, named Ford the sole custodian and residential parent of the parties' children, and maintained equal parenting time for her ex-husband, Daryl Blessing. Ford contends that the trial court abused its discretion by failing to restrict Blessing's parenting time.

{¶ 2} We conclude that the trial court did not abuse its discretion in determining that maintaining the week-to-week parenting already employed by the parties is in the best interest of the minor children. Therefore, the judgment of the trial court will be affirmed.

## I. Factual Background

{¶ 3} Blessing and Ford were married in February 2001 and divorced in February 2015. They have three minor children who were born during the marriage. Pursuant to a shared parenting agreement incorporated into the final judgment and decree of divorce, the parties agreed to share legal custody of the children. Ford was designated as the residential parent solely for the purpose of receiving public benefits on behalf of the children. The agreement provided that the parties would have equal, week-to-week parenting time with the children. Holiday parenting time followed the Montgomery County Standard Order of Parenting Time.

{¶ 4} In November 2015, Ford filed a motion to terminate the shared parenting agreement. Her motion requested that she be designated the sole legal and residential

custodian of the children. Thereafter, Blessing filed a motion to terminate the shared parenting agreement. He also requested sole custody of the children. Neither motion made a specific request for a modification of parenting time.

{¶ 5} A hearing was conducted in April 2016. The evidence adduced at the hearing indicates that, since the initiation of the divorce proceedings, Ford has resided in approximately five different residences. At some point following the parties' separation, Ford became engaged to another man with whom she and the children resided. The evidence indicates that this man was involved in a burglary in May 2015 when he was shot and killed by the police. In July 2015, Ford became romantically involved with her employer. In August 2015, Ford was convicted of operating a vehicle while under the influence of alcohol. Ford and the children moved into the employer's home sometime the same month.[1]

{¶ 6} Ford testified that Blessing abused her during the marriage. She testified that he broke her nose on one occasion. She testified that on another occasion, Blessing choked her until she passed out. She testified that she did not file charges. Ford further testified that during their separation, Blessing attempted to force his way into her parents' home while she was residing there. Ford obtained a protection order against Blessing. She testified that Blessing was convicted of violating the protection order. Ford testified that Blessing had punished her now adult sons, born of a different relationship, by making them hold brooms above their heads. She testified that she and the minor children attend counseling due to the abuse by Blessing. She testified that

---

[1] Prior to this move, both Ford and Blessing had been living in the Kettering Schools District. With this move, Ford resided in a different school district.

Blessing permits the children to miss school, but also testified that they are doing well in school. She also testified that she permits the children to miss school.

{¶ 7} Ford's adult sons, T. and J., testified. Both of them lived with Blessing and Ford while they were children. T. testified that he did not get along with Blessing, and that he worried that the minor children would be subjected to mental abuse and improper discipline if they lived with Blessing. He testified that Blessing used inappropriate language around him and J., as well as around the minor boy, but that he did not do so around the two minor girls.

{¶ 8} J. testified that Blessing had punished him and T. by having them hold sledgehammers over their heads for 45 minutes. He then noted that they were able to take breaks during the punishment. He testified that this would occur when he and his brother would engage in physical fights. He testified that the sledgehammers were used after other punishments were deemed ineffective. There was no evidence that Ford objected to this type of punishment.

{¶ 9} Blessing presented the testimony of his daughter and his sister. Both testified that Blessing is not violent and that he is a good parent. They testified that the minor children are bonded to Blessing. Blessing also testified that he has lived in his current home for six years. He is self-employed and works from home. He testified that he raised Ford's sons from a previous relationship for 15 years. He testified that he has disciplined the older boys, as well as the minor boy by making them hold a broom out in front of them.

{¶ 10} The Guardian Ad Litem submitted a report in which it was noted that the parents have a lot of unnecessary conflict, and that they lack the ability to co-parent. The

GAL found that the problems stem more from the fact that Blessing has unresolved relationship issues with Ford, rather than any problem with parenting. However, the GAL noted that Blessing tends to inappropriately involve the children in the parents' issues in order to remain involved in Ford's life. The GAL noted that Blessing has sought protection orders against Ford and T. which were ultimately dismissed, but which caused interference with Ford's parenting time. The GAL also noted that Ford had obtained a protection order against Blessing, and that Blessing had been convicted of violating that order.

{¶ 11} The GAL interviewed Erik Wolfe, the social worker counseling Ford and the minor children. Wolfe indicated that he met with Ford and the children approximately eight times during 2015 and 2016. Wolfe indicated that, based upon the reports of the children, he felt that the "case feels dangerous," and that he felt that Blessing has manipulation and control issues. Wolfe indicated that he made a referral to Children Services.[2] However, Wolfe did not interview Blessing, and indicated that he was unable to make a custody or parenting time recommendation.

{¶ 12} The GAL interviewed the children during a home visit with Blessing. The GAL noted that the home and grounds were in "disrepair," and that the inside of the home is cramped. While interviewing the children, the GAL felt they had been coached. He noted that the two younger children, ages ten and eight, took turns sitting on Blessing's lap and "cuddling" with him during the visit.

{¶ 13} The GAL recommended termination of the shared parenting plan. He also

---

[2] The evidence shows that there were no open files with Children Services at the time of the hearing.

recommended that Ford be designated as the custodial parent. The GAL also stated:

> By definition if [Ford] is named the Custodian then the children will be required to change schools in the upcoming academic year. If not handled cooperatively between the parents this could be the source of great upset for the children and ongoing conflict between the parents. [Ford] has voiced her commitment to immediately engaging the children with a different therapist focused on the conflict they are experiencing with their parents and in making a transition to primarily being in her household and changing schools. [Blessing] should be included in that process and provided he responds appropriately then his parenting time should be at least the Court's Standard Order. [Blessing] should be cautioned however in the event he continues to involve the children so heavily in these disputes with [Ford] the Court may wish to consider a supervised involvement for [Blessing's] parenting time to keep the inappropriate information and matter away from the children when visiting with him.

{¶ 14} Following the hearing, the magistrate terminated the shared parenting arrangement and designated Ford as the sole residential and legal custodial parent. However, the magistrate maintained the week-to-week parenting time. Ford filed objections to the decision solely in regard to parenting time. The trial court overruled the objections, and affirmed and adopted the magistrate's decision. Ford appeals.

## II. The Trial Court Did Not Abuse Its Discretion.

{¶ 15} Ms. Ford's sole assignment of error states:

THE TRIAL COURT ABUSED ITS DISCRETION IN ORDERING WEEK-
TO-WEEK PARENTING TIME.

{¶ 16} Ford contends that the trial court abused its discretion because it did not reduce and/or restrict Blessing's parenting time. Her argument hinges upon the claims that (1) the trial court ignored and misconstrued the report of the Guardian Ad Litem, (2) Blessing is abusive, and (3) by merely changing the parties' titles and maintaining the week-to-week parenting time, the court failed to address the issues that caused the parties to seek termination of shared parenting.

{¶ 17} R.C. 3109.04(E)(2)(c) permits a court to terminate shared parenting at the request of one or both parents if the court determines that shared parenting is not in the best interest of the children. After terminating a shared parenting agreement, the court must then issue a modified decree allocating parental rights "as if no decree for shared parenting had been granted and as if no request for shared parenting ever had been made." R.C. 3109.04(E)(2)(d).

{¶ 18} "R.C. 3109.051(D) sets forth [16] factors to be considered in granting parenting time. These include the relationship between the parent and child(ren); their geographic proximity and available time; the age, health, and safety of the children; the mental and physical health of all the parties; and any other factor bearing on the best interest of the children." *Murphy v. Murphy*, 2d Dist. Greene No. 2007 CA 43, 2007-Ohio-6692, ¶ 17. "The issue of parenting time is a matter entrusted to the discretion of the trial court. Thus, absent an abuse of that discretion, we will not reverse a trial court's decision on parenting time." *Szeliga v. Szeliga*, 2d Dist. Greene No. 2011–CA–65, 2012–Ohio–1973, ¶ 12. "Abuse of discretion" is a term used to indicate that a trial court's

decision is unreasonable, arbitrary or unconscionable. *Id.* "The knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record. Thus, a reviewing court may not reverse a custody determination unless the trial court has abused its discretion." (Citations omitted.) *Beismann v. Beismann*, 2d Dist. Montgomery No. 22323, 2008–Ohio–984, ¶ 20.

{¶ 19} After reviewing the GAL's report, we cannot say that the trial court either ignored, or misconstrued, the recommendations. The GAL recommended the termination of the shared parenting plan and the designation of Ford as custodial parent. The court followed this recommendation. The GAL further noted that Blessing should receive "at least" the standard order of parenting time so long as he refrains from involving the children in his disputes with Ford. Given that the GAL recommended the standard order of parenting time as the minimum, we cannot base a finding that the trial court ignored or misconstrued the recommendation on the mere fact that the court maintained the parenting time previously agreed to by the parties. The concerns raised by the GAL regarding Blessing's involvement of the kids in the parents' issues simply were not so serious as to compel the trial court to disqualify Blessing from having extended parenting time with his children.

{¶ 20} Ford next contends that the evidence demonstrates that Blessing is abusive. However, the trial court noted that the allegations of abuse are unsubstantiated, and that there is no evidence of criminal behavior involving the minor children. We note that the allegations of abuse made by Ford involved incidents that occurred prior to the execution of the shared parenting agreement in which Ford agreed

to equal custody and parenting time. Blessing denied abusing Ford. Further, there was no evidence presented to indicate that Blessing had abused the children. Thus, we cannot say that the trial court abused its discretion by failing to credit Ford's testimony in this regard.

{¶ 21} Finally, contrary to Ford's argument that the trial court's order changes nothing, we note that her designation as sole residential and custodial parent provides her with the ultimate decision-making authority regarding the health and education of the children. Thus, the trial court has effected a change in the status of the parties which has the potential to avert any further parenting conflict. If conflict continues to occur, Ford is free to file subsequent motions to address the issues.

{¶ 22} The record shows that both parties have made some questionable decisions. However, there is nothing in this record to suggest that either parent has harmed the children or that either parent is unfit. There is evidence upon which the trial court could find that the children are bonded with Blessing. Further, they are healthy and doing well in school. Blessing has flexibility in his self-employment so that he can transport the children to and from their new school during his parenting time. There is nothing to indicate that Blessing has any mental health problems that would prevent him from properly parenting. While his home is reported to be in disrepair, the trial court did not find this to be of enough significance to require restricted or supervised parenting time.

{¶ 23} Our review of the record does not convince us that the trial court abused its discretion in maintaining equal parenting time. Accordingly, Ford's sole assignment of error is overruled.

### III. Conclusion

**{¶ 24}** Ford's sole assignment of error is overruled and the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and FROELICH, J., concur.

Copies mailed to:

Daryl A. Blessing
Charles D. Lowe
Hon. Timothy D. Wood