[Cite as *In re G.B.*, 2017-Ohio-8418.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

IN RE: G.B.

:
:
:      Appellate Case No. 27601
:
:      Trial Court Case No. 2015-3161
:
:      (Appeal from Common Pleas Court-
:      Juvenile Division)
:
:

. . . . . . . . . . .

O P I N I O N

Rendered on the 3rd day of November, 2017.

. . . . . . . . . . .

JAMES R. KIRKLAND, Atty. Reg. No. 0009731, 10532 Success Lane, Dayton, Ohio 45458
    Attorney for Appellant

ELLEN C. WEPRIN, Atty. Reg. No. 0042354, 4 East Schantz Avenue, Dayton, Ohio 45409
    Attorney for Appellee

. . . . . . . . . . . .

WELBAUM, J.

**{¶ 1}** This case is before us on the appeal of Appellant, S.C., from a judgment overruling her motion for contempt against Appellee, G.B., Sr., ordering shared parenting, retaining G.B., Sr., as residential parent, and allowing S.C. parenting time in accordance with the court's standard order of parenting time.[1]

**{¶ 2}** For the reasons discussed below, we conclude that the trial court did not abuse its discretion in overruling Mother's motion for contempt, or in ordering the parties to engage in shared parenting. In addition, the court did not abuse its discretion in retaining Father as the residential parent and ordering that Mother receive the standard order of parenting time rather than equal time. The evidence supported the court's decision, and the decision was based on sound reasoning. Accordingly, the judgment of the trial court will be affirmed.

## I. Facts and Course of Proceedings

**{¶ 3}** G.B., the minor child at issue in this appeal, was born in April 2008. On May 21, 2015, Mother filed a Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA") petition with the Montgomery County Juvenile Court. According to certified documents attached to the petition, a judgment for custody and parenting time had been entered by the Oakland County, Michigan Circuit Court in January 2009. Subsequently, in June 2009, a consent judgment of support, custody, and parenting time provisions was filed. After that time, 167 pleadings and submissions were filed in the Michigan case.

---

[1] For ease of discussion and clarity, we will refer to S.C. as "Mother," and G.B., Sr., as "Father."

**{¶ 4}** In December 2012, Mother filed a motion to modify parenting time and G.B.'s primary residence.   Father then filed a motion to modify physical custody and parenting time for G.B.   Hearings were held on 10 days between February 21, 2013, and July 19, 2013, regarding these matters as well as issues pertaining to Mother's alleged contempt for violation of parenting time orders, and to attorney fees.

**{¶ 5}** On December 12, 2013, the Oakland Circuit Court ordered that physical custody of G.B. would be placed with Father until G.B. reached 18 years of age.[2] Mother was given parenting time with G.B. on alternate weekends from 6:00 p.m. Friday to 6:00 p.m. on Sunday, and summer parenting time of three separate 14-day periods. The parties were also given alternating holidays.   At the time, Mother was living in Michigan, and Father was living in Dayton, Ohio.   As a result, Findlay, Ohio, was designated as the drop-off and pick-up location.   The court further ordered Mother to pay $2,000 to Father's counsel based on past violations of parenting time orders and violations that had been raised during the evidentiary hearings.

**{¶ 6}** Findings and Recommendations of a referee were attached to the order. Concerning the parties' ability to give the child guidance and education, and to raise the child, Father was favored.   In this regard, the referee stated that:

> Reviewing the testimony in these hearings regarding the capacity of the parties to provide guidance, education and raising of this child, it is clear that defendant/father is favored.   Plaintiff/mother's behavior with respect to her involvement in the child's life in Dayton[,] the child's daycare facility,

---

[2] The order was dated December 10, 2013, but was apparently filed on December 12, 2013.   As a result, we will refer to it as the December 12, 2013 Order.

doctor's offices, pick-up and drop-off for parenting time, and plaintiff/mother's behavior during these hearings (threatening defense counsel, the family counselor at a Court hearing) all weigh heavily toward defendant/father being the more proper parent who can properly provide guidance, education, and proper raising of this child.

December 12, 2013 Oakland Circuit Court Order Re: Custody and Parenting Time, Findings and Recommendations, pp. 1-2, attached to Plaintiff's UCCJEA and Verified Complaint and Petition to Register Foreign Orders and for Other Relief, Doc. #96.

{¶ 7} As to a factor entitled "[t]he moral fitness of the parties involved," the referee stated that:

As to this factor, defendant/father is favored. A review of the brief filed by defendant/father with respect to this factor is extremely instructive. Plaintiff/mother's scattered financial condition, her failure to disclose critical information in her bankruptcy pleadings, her failure to ever obey this Court's obligation to pay defendant/father's attorney, fees of $1,000 which were earlier ordered, and most critically, her fabrications to the police that defendant/father committed an act of domestic violence against her all point in the direction of defendant/father being heavily favored on this factor.

*Id.* at p. 3.

{¶ 8} Concerning the willingness of each parent to facilitate and encourage a close and continuing parent-relationship between the other parent and the child, the referee found as follows:

As to this factor, the parties are equal. As set forth extensively by

defense counsel, plaintiff/mother has a long history of denying defendant/father his parenting time; numerous motions to show cause for violation of the parenting time have been filed by defendant/father with several findings that plaintiff/mother has been in violation of the Court's orders. In contrast, defendant/father has been too abrupt and closed off about his communication with plaintiff/mother. While some of defendant/father's reluctance to engage in phone conversation is understandable, given the prior history of allegations of domestic violence, a false allegation of child abuse perpetrated on the child by a neighbor of defendant/father's and other problems, it is clear that defendant father has to step up and be more engaged in communicating with plaintiff/mother.

*Id.* at pp. 3-4.

**{¶ 9}** Concerning "any other factor," the referee commented that:

As to this factor, defendant/father is favored. Plaintiff/mother has conducted herself poorly during the years when the parties have been attempting to work together and the child has had seven consecutive days in each parent's household. She is either late or does not appear for parenting time, pick-up and drop off, she has been rude, disruptive and hostile to Court staff, opposing counsel, childcare providers, the child's pediatrician, and virtually everyone on this case with whom she had a conflict.

December 12, 2013 Oakland Circuit Court Order Re: Custody and Parenting Time, Findings and Recommendations, at p. 4.

{¶ 10} In November 2014, Mother and her attorney appeared with the police at G.B.'s school in Dayton on a weekday in an attempt to obtain G.B. for the Thanksgiving holiday. This occurred on the day before the holiday, at which time Mother would not have been entitled to have the child under the December 12, 2013 court order. The police said they could not enforce the order, and the principal declined to let Mother take G.B. After being telephoned, Father refused to let Mother see G.B. Mother's attorney left after being at the school more than two hours.

{¶ 11} In early March 2015, the Oakland Circuit Court filed an order requiring Mother to do three supervised visits, with a review from a parenting time supervisor, before her parenting time would be reinstated.[3] Mother was supposed to come back before the court in 45 days, after having completed the three supervised visits. The initial suggestion was that the parties use Erma's House, which was located in Dayton. However, that did not happen. There was a dispute as to the reason, with Mother contending that Father did not register with Erma's House in a timely fashion. On the other hand, Father stated that he had no choice in dates assigned for his intake interview

---

[3] The record does not clearly indicate when Mother's parenting time was suspended. Mother's attorney, who testified at the Ohio custody hearings, indicated that Mother had retained him in early 2015 to represent her in connection with a show cause hearing. According to the attorney, they were trying to get the "show cause answered" and the supervised parenting done so that Mother could have her parenting time "resume." Transcript of Proceedings, Vol. I, p. 86. The fact that Mother was answering a show cause hearing indicates that she, not Father, was allegedly at fault. The March 2015 order requiring supervised visitation was filed as a result of the show cause hearing. Furthermore, Mother and Father testified that Mother and G.B.'s grandmother were permitted to see G.B. for an hour in Dayton in late January 2015, following a court proceeding in Michigan. This indicates that parenting time had been suspended at some point before January 2015; otherwise, Mother would have not been limited to one hour of visitation. Again, Mother admitted that her parenting time had been suspended, but she never stated when this occurred.

with Erma's house, and took the appointment date that was given to him.

{¶ 12} Due to a backlog at Erma's House, the parties had further negotiations about a potential visitation supervisor, but were unable to agree. On May 7, 2015, the Michigan court denied Mother's motion to reinstate parenting time and also denied her motion to remove the case to Ohio based on the claim that Michigan was an inconvenient forum. As was noted, Mother then filed her UCCJEA petition in the Montgomery County, Ohio, Juvenile Court on May 21, 2015. In the petition, Mother indicated that her current residence was located in Maryland; Father's address was listed as being in Dayton, Ohio.

{¶ 13} On May 21, 2015, Mother also filed a motion for contempt and a request to modify the parties' shared parenting agreement. In the motion, Mother asked that she be designated the primary residential parent and legal custodian for G.B. At a hearing held on June 18, 2015, the parties agreed that Mother would have three hours of supervised parenting time beginning on June 20, 2015, and no time on June 27 and July 4, 2015, because the child would be on vacation with Father. After that point, the three-hour supervised parenting time would resume on July 11, 2015, and continue thereafter until further order.

{¶ 14} On July 1, 2015, the trial court conducted an in-camera interview of G.B., and appointed a guardian ad litem ("GAL") for G.B. Subsequently, on July 9, 2015, Mother filed a motion to modify summer parenting time, and the parties then agreed that Mother would exercise unsupervised bi-weekly parenting time within the State of Ohio beginning Friday, August 14, 2015, and ending on a later permanent parenting schedule ordered by the court or agreed upon by the parties. The agreed parenting time was for Friday at 6:00 p.m. until Sunday at 6:00 p.m. on alternating weekends.

{¶ 15} In September 2015, the GAL filed a report, recommending that custody remain with Father, and that an interim order of standard parenting time be issued with Mother, so long as she stayed in the Dayton area on days she exercised her parenting time. In addition, the GAL recommended an extended standard order of parenting time if Mother relocated to the Dayton area, to allow a more equal division of parenting time.

{¶ 16} When Mother was interviewed by the GAL, she was staying in a hotel. Mother indicated that she was in the process of purchasing a home in Clayton, Ohio, and would be living there on a full-time basis within the next month. At the time of the custody hearings, however, Mother was living in an apartment in Fairborn, Ohio.

{¶ 17} In November 2015, Mother filed a request for shared parenting and a shared parenting plan. She proposed that both parents would be residential parents and legal custodians, and that they would alternate having the child on a week-to-week basis. She also requested that her home be made G.B.'s address for school purposes.

{¶ 18} A magistrate held hearings on December 17, 2015, March 8, 2016, and May 26, 2016. After hearing the evidence, the magistrate filed a decision on May 31, 2016, denying Mother's motion for contempt. The magistrate further held that the parties would have shared parenting, with Father being designated the residential parent for school purposes. Additionally, the magistrate held that Mother would have parenting time with G.B. pursuant to the court's standard order of parenting time, that the parents were to cooperate in enrolling G.B. in counseling, and that they would each follow the counselor's recommendations until further court order.

{¶ 19} Mother asked for findings of fact and conclusions of law, and the magistrate filed findings of fact and conclusions of law on June 21, 2016. The magistrate again

concluded that shared parenting and the court's standard order of parenting time for Mother were in G.B.'s best interest. Mother then objected to the magistrate's decision. On April 26, 2017, the trial court overruled Mother's objections to the magistrate's decision. This appeal followed.

## II. Alleged Error in Granting Mother Standard Parenting Time

{¶ 20} Mother's First Assignment of Error states that:

The Judge and Magistrate Erred in Finding that Mother Shall Have Parenting Time in Accordance With the Standard Order of Parenting Time Contrary to the GAL Recommendation.

{¶ 21} Under this assignment of error, Mother contends, without citing any authority, that the trial court erred in failing to adopt the GAL's final recommendation for the parents to have shared parenting and equal parenting time. The GAL made this recommendation at the end of the hearings, based on evidence that the parties had shared joint "legal" custody in Michigan, and that the December 12, 2013 Michigan order gave Father only physical custody, rather than sole legal custody. According to the evidence, legal custody gives a parent a say in things like educational and medical decision-making; physical custody dictates where the child will live, and the parent not obtaining physical custody will be allowed parenting time. Typically, these types of orders are entered together.

{¶ 22} As was noted, the Ohio proceeding was initiated pursuant to the UCCJEA, which is contained in R.C. Chap. 3127. Pursuant to R.C. 3127.35, Mother registered the

December 12, 2013 Michigan custody order with the trial court.[4]  R.C. 3127.36(B) provides that while Ohio courts must recognize and enforce registered child custody determinations of courts of another state, an Ohio court may not modify these orders except in accordance with R.C. 3127.15 to R.C. 3127.24.

{¶ 23} Under the UCCJEA, the court that originally grants a custody decree has " 'jurisdictional priority and exclusive continuing jurisdiction' " over the case.  (Citation omitted.)  *Rosen v. Celebrezze*, 117 Ohio St.3d 241, 2008-Ohio-853, 883 N.E.2d 420, ¶ 21; *McGhan v. Vettel*, 122 Ohio St.3d 227, 2009-Ohio-2884, 909 N.E.2d 1279, ¶ 19-23. However, "an Ohio court can modify an out-of-state custody determination if (1) it has jurisdiction to make an initial child-custody determination under R.C. 3127.15(A)(1) or (2), and (2) one of the two statutory factors specified in R.C. 3127.17 is applicable."  *McGhan* at ¶ 23.

{¶ 24} The trial court did not make any specific findings on these points, other than accepting the foreign registration and noting that the matter had been transferred from Michigan.  *See* Magistrate's Decision and Judge's Order, Doc. #52, pp. 1-2; Magistrate's Findings of Fact and Conclusions of Law, Doc. #44, p. 1.  To the extent the magistrate's statement implies that Michigan had transferred the case, it is incorrect, as the Michigan court, in fact, denied Mother's request to remove the case to Ohio based on the fact that Michigan was an inconvenient forum.  *See* May 7, 2015 Order attached to Mother's petition to register a foreign decree (Doc. #96).  The record also does not reflect that Michigan ever "transferred" the case or that any documents were actually transferred to

---

[4] Mother did not register any later orders impacting or illuminating her legal or parenting time rights, other than the March 7, 2015 order that refused to "reinstate" her parenting time.

Ohio.

{¶ 25} Nonetheless, based on the undisputed facts in the record, the trial court properly assumed jurisdiction to modify the custody order. R.C. 3127.15(A)(1) allows courts to make initial child-custody decisions where Ohio "is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding * * *." " 'Home state' means the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately preceding the commencement of a child custody proceeding * * *." R.C. 3127.01(B)(7). There is no dispute about whether G.B. had lived in Ohio for at least six consecutive months prior to the date Mother's petition was filed; in fact, the evidence indicated that G.B. had lived in Ohio continuously since at least September 2013. As a result, the first requirement for modification noted in *McGhan* was satisfied.

{¶ 26} As was noted, in order to modify another state's custody decree, one of two grounds listed in R.C. 3127.17 must also apply. *McGhan*, 122 Ohio St.3d 227, 2009-Ohio-2884, 909 N.E.2d 1279, at ¶ 23. These grounds are that:

(A) The court of the other state determines that it no longer has exclusive, continuing jurisdiction under section 3127.16 of the Revised Code or a similar statute of the other state or that a court of this state would be a more convenient forum under section 3127.21 of the Revised Code or a similar statute of the other state.

(B) The court of this state or a court of the other state determines that the child, the child's parents, and any person acting as a parent do not

presently reside in the other state.

{¶ 27} Due to Michigan's denial of Mother's motion to transfer, subsection (A) does not apply. However, subsection (B) would apply, as Father was residing in Ohio when the registration petition was filed, and Mother listed a Maryland address in her petition. Mother also relocated from Maryland to Ohio during the pendency of the proceedings. Consequently, even though the trial court did not make specific findings on these points, the record clearly indicates that the trial court had the ability to modify the out-of-state custody decision.

{¶ 28} Turning now to the merits, we note that we review custody and parenting time decisions for abuse of discretion. *See, e.g.*, *Blessing v. Blessing*, 2d Dist. Montgomery No. 27353, 2017-Ohio-2878, ¶ 18; *Miller v. Miller*, 37 Ohio St.3d 71, 74, 523 N.E.2d 846 (1988). " 'Abuse of discretion' has been defined as an attitude that is unreasonable, arbitrary, or unconscionable." (Citation omitted.) *AAAA Enterprises, Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). The Supreme Court of Ohio has stressed that "most instances of abuse of discretion will result in decisions that are simply unreasonable." *Id.* Furthermore, the court has said decisions are unreasonable if they are not supported by a "sound reasoning process * * *." *Id.*

{¶ 29} In addition, we defer to a trial court's factual findings because " 'the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.' " *Davis v. Flickinger,* 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997), quoting *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984).

{¶ 30} In order to modify a designation of residential parent and legal custodian, the court must decide that a " 'change in circumstances' has occurred," and must also find that "the modification is in the best interest of the child." *Fisher v. Hasenjager*, 116 Ohio St.3d 53, 2007-Ohio-5589, 876 N.E.2d 546, syllabus, construing R.C. 3109.04(E)(1)(a). Under this statute, the court must find, "based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child." R.C. 3109.04(E)(1)(a).

{¶ 31} While a change in circumstances does not have to be "substantial," it "must be a change of substance, not a slight or inconsequential change." *Davis* at 418. " 'The clear intent of [R.C. 3109.04] is to spare children from a constant tug of war between their parents who would file a motion for change of custody each time the parent out of custody thought he or she could provide the children a "better" environment. The statute is an attempt to provide some stability to the custodial status of the children, even though the parent out of custody may be able to prove that he or she can provide a better environment.' " *Id.*, quoting *Wyss v. Wyss*, 3 Ohio App.3d 412, 416, 445 N.E.2d 1153 (10th Dist.1982).

{¶ 32} In addition, the trial court must retain the residential parent that the prior decree or prior shared parenting decree has designated unless "modification is in the best interest of the child" and one of three listed conditions exists. As relevant here, the condition would be that "[t]he harm likely to be caused by a change of environment is

outweighed by the advantages of the change of environment to the child." R.C. 3109.04(E)(1)(a)(iii).

**{¶ 33}** The trial court found a material change of circumstances based on Mother's relocation from Michigan to Ohio, which would allow her to exercise additional parenting time. However, the court also concluded that it did not find this change in circumstances significant enough to make it necessary to modify the residential parent for school purposes. After considering the factors in R.C. 3109.04(F)(1), the court made the following statement:

> It is the hope of this Court that shared parenting will facilitate better communication between the parties, as joint decision-making is required under the order. It is not beneficial to the child to have either parent cut out of his life in any way, which necessitates both Mother and Father putting aside their issues with each other for the betterment of the child. The Court cannot compel the parents to get along with each other. However, the Child's best interests are the paramount concern of the Court, and it is clear that Child wants and needs both parents to have a significant part in his life. Based on the history involved in the record, legal custody with one parent seems likely to result in alienation from the other parent as evidenced by the previous Michigan proceedings and the parent's [sic] current unwillingness to properly communicate. This will only lead to further confusion and uncertainty in the child.

Decision and Judgment Concerning Objections to the Decision of the Magistrate, Doc. #3, p. 9.

**{¶ 34}** Mother does not appear to dispute the trial court's conclusion that the parties should engage in shared parenting; her focus is on the fact that the GAL recommended that the parties have equal parenting time. Because the court opposed a week-to-week division of parenting time, the GAL suggested a schedule of two days with Father, two days with Mother, and so on, plus alternating weekends.

**{¶ 35}** Notably, trial courts do not have to follow the recommendations of a guardian ad litem. *Bomberger-Cronin v. Cronin*, 2d Dist. Greene No. 2014-CA-4, 2014-Ohio-2302, ¶ 27, citing *Lumley v. Lumley*, 10th Dist. Franklin No. 09AP-556, 2009-Ohio-6992, ¶ 46. " 'As the fact finder, the trial court determines the guardian ad litem's credibility and the weight to be given to the guardian ad litem's recommendation. Because assessment of the credibility and weight of the evidence is reserved for the trial court, we will not second guess the court's decision to disregard the guardian ad litem's recommendation.' " *Id.*, quoting *Lumley* at ¶ 46. (Other citation omitted.)

**{¶ 36}** The history of this case indicates that the parents do not communicate well and that their relationship is strained and often contentious, as the trial court noted. Doc. #3 at p. 8. According to the evidence, equal weekly parenting time did not work well in Michigan, and the frequent in-person contact required for an exchange every few days seems ill-advised. Moreover, changing a child's residence every few days appears more conducive to chaos rather than stability, particularly where, as here, the parenting styles are quite different. As the GAL noted, this is not a criticism of either parenting style; the fact is simply that the parents' households are "drastically different." Transcript of Proceedings, Vol. I, p. 17.

**{¶ 37}** The trial court also noted Mother's poor conduct in Michigan, the

suspension of her parenting time by the Michigan court, the fact that she had a confrontation with school officials at the child's school and that she had been "trespassed" from school grounds (although Mother denied having a confrontation), and the fact that Father was reluctant to cooperate with Mother. These facts are supported by the evidence in the record. As an example, Mother's denial of any confrontation was impeached by a January 22, 2016 memo written by a teacher at the child's school to the school's Chief Academic Officer. This memo indicates that Mother was confrontational and threatening to the teacher. *See* Defendant's Ex. C, admitted for impeachment purposes, Transcript of Proceedings, Vol. III, pp. 234-235.

{¶ 38} By refusing to give either parent sole legal custody and requiring shared parenting with the larger amount of time allotted to Father as it had been for the three years before the Ohio custody decision, the trial court was attempting to maintain stability for the child. Retention of Father as the residential parent was also consistent with the testimony of the GAL, who indicated that there were no changes in the minor child or father from the time Father obtained custody that rose to a change in circumstances. Transcript of Proceedings, Vol. I, at pp. 58-59.

{¶ 39} The trial court also quite properly hoped that a positive outcome would result from requiring the parties to cooperate and reminding them to keep their child's welfare in mind; the court's reasoning, while perhaps on the optimistic side, was sound. In addition, contrary to Mother's contention that she already had the standard order of parenting time prior to the trial court's decision, the December 12, 2013 Michigan order allowed Mother only alternating weekends from Friday at 6:00 p.m. to Sunday at 6:00 p.m. Furthermore, Mother's parenting time had been suspended in Michigan, and on

May 7, 2015, the Oakland Circuit Court had denied Mother's motion to reinstate parenting time. As a result, when Mother registered the foreign decree with Montgomery County, she actually had no entitlement to parenting time. Thereafter, and up to the point of the final order in the present case, Mother was allowed parenting time only on alternate weekends from Friday evening to Sunday evening.

{¶ 40} In contrast, the parenting time ultimately granted under the Montgomery County Juvenile Court Standard Order of Parenting Time allows mother to have Friday evening to Sunday evening on alternating weekends, plus parenting time on Wednesday evenings. Additionally, the standard order allows summer parenting time in alternating one-week increments, which provides Mother with substantially more parenting time than she had before. The trial court's order also encourages extended visitation by agreement of the parties. Whether that occurs depends on their ability to cooperate with each other, meaning cooperation is not a one-way street.

{¶ 41} Based on the preceding discussion, we conclude that the trial court's decision was based on sound reasoning and was not an abuse of discretion. Accordingly, the First Assignment of Error is overruled.

## III.  Denial of Motion for Contempt

{¶ 42} Mother's Second Assignment of Error states that:

Actions of the Father [sic] Requires Finding of Contempt and Ordering Make-Up Time and Fees.

{¶ 43} Under this assignment of error, Mother contends that the trial court erred in failing to find Father in contempt for denying Mother's parenting time and communication

with G.B. from September 25, 2013 through February 18, 2015.

**{¶ 44}** "Contempt is defined in general terms as disobedience of a court order." *State ex rel. Corn v. Russo*, 90 Ohio St.3d 551, 554, 740 N.E.2d 265 (2001). "The power of contempt is inherent in a court, such power being necessary to the exercise of judicial functions." (Citations omitted.) *Denovchek v. Bd. of Trumbull Cty. Commrs.*, 36 Ohio St.3d 14, 15, 520 N.E.2d 1362 (1988). The power to punish contempt is both inherent and statutory. (Citation omitted.) *Burt v. Dodge*, 65 Ohio St.3d 34, 35, 599 N.E.2d 693 (1992).

**{¶ 45}** We review contempt decisions for abuse of discretion. (Citation omitted.) *State ex rel. Cincinnati Enquirer v. Hunter*, 138 Ohio St.3d 51, 2013-Ohio-5614, 3 N.E.3d 179, ¶ 21. An abuse of discretion means that a trial court acted unreasonably, arbitrarily, or unconscionably. (Citation omitted.) *Id.* This is a "highly deferential standard of review," and "we will not lightly substitute our interpretation for that of the issuing court." (Citations omitted.) *Id.* at ¶ 29.

**{¶ 46}** After reviewing the record, we find no abuse of discretion. Based on Mother's own argument, the matters in question occurred prior to the time that Mother filed the May 21, 2015 petition to register the Michigan custody order. *See* Mother's Brief, p. 7 (alleging error based on the trial court's failure to find Father in contempt for denying visitation and phone contact between September 25, 2013 to February 18, 2015).

**{¶ 47}** "The trial court has broad discretion to determine whether its *own orders* have been violated." (Citation omitted; emphasis added.) *In re Ayer*, 119 Ohio App.3d 571, 576, 695 N.E.2d 1180 (1st Dist.1997). In particular, the rule is well-established that "the power to judge a contempt rests exclusively with the court contemned, and * * * no

court is authorized to punish a contempt against another court." *Johnson v. Perini*, 33 Ohio App.3d 127, 129, 514 N.E.2d 1133 (3rd Dist.1986). *Accord In re Contempt of Lance*, 2016-Ohio-2717, 55 N.E.3d 1129, ¶ 16 (8th Dist.).

{¶ 48} Until May 21, 2015, at least, Michigan had exclusive jurisdiction over the custody case. Michigan's UCCJEA provides that a Michigan court that "has made a child-custody determination * * * has exclusive, continuing jurisdiction over the child-custody determination until * * * [a] court of this state or a court of another state determines that neither the child, nor a parent of the child, nor a person acting as the child's parent presently resides in this state." Mich.Comp.Laws Ann. 722.1202(1)(b).

{¶ 49} Ohio's statute, R.C. 3127.16, contains a similar provision. Thus, the trial court in Ohio did not have the ability to punish Father for acts that occurred before Ohio gained jurisdiction over the matter, and that were allegedly in contempt of another court's orders. Mother's proper recourse would have been to file a contempt action with the Michigan court. Clearly, Mother was resorting to the Michigan court shortly before the petition for registration was filed in Ohio, as one of the documents attached to the Ohio petition was a May 7, 2015 decision overruling Mother's motion to reinstate visitation and rejecting her contention that the matter should be removed from Michigan to Ohio.[5]

{¶ 50} After the matter was registered in Ohio, the trial court could have punished Father for violation of the court's own orders, the first of which was entered on July 1, 2015, when the court appointed the GAL and ordered the parties to each pay the GAL

---

[5] On page 8 of her brief, Mother does refer to a matter that occurred after February 18, 2015 – an alleged denial of phone communication with G.B. on his birthday in 2015. Again, however, that would have occurred in April 2015, prior to the time that Mother filed her petition to register the foreign order.

$350. However, the magistrate's decision concluded that neither party had violated any court orders in the Montgomery County Juvenile Court. *See* Magistrate's Findings of Fact and Conclusions of Law, Doc. #44 at p. 2.

{¶ 51} In overruling Mother's objections to the magistrate's decision, the court noted Father's testimony that he believed he had obeyed every agreed order or court order, and had done what the court ordered concerning the child's interaction with Mother. Decision and Judgment Concerning Objections to the Decision of the Magistrate, Doc. #3 at p. 7. Additionally, the court noted the GAL's testimony that Father would be the party more likely to honor and facilitate parenting orders. And finally, the court stated that the GAL's conclusion was based on the prior orders from Michigan, which found that Mother did not follow the court's orders, and had " 'conducted herself poorly during the years when the parties had been attempting to work together.' " *Id.*

{¶ 52} The trial court clearly agreed with Father's testimony at the hearing. Because this was a credibility determination, we defer to the trial court's findings. *Davis,* 77 Ohio St.3d at 418, 674 N.E.2d 1159.

{¶ 53} Furthermore, even if the trial court could have enforced a failure to obey another court's order, Mother did not establish that Father had violated the Michigan court orders. The burden of proof for civil contempt is clear and convincing evidence. *Moraine v. Steger Motors, Inc.,* 111 Ohio App.3d 265, 268, 675 N.E.2d 1345 (2d Dist.1996). "In order to be clear and convincing, evidence must leave the trier of fact with the firm conviction or belief that the allegations involved are true." *Id.,* citing *Cross v. Ledford,* 161 Ohio St. 469, 120 N.E.2d 118 (1954).

{¶ 54} Based on the evidence submitted, all we know is that Father obtained

physical custody of the child in December 2013, that mother was given alternate weekend visitation, and that at some point thereafter, the court suspended Mother's parenting time. Mother failed to establish when this occurred, and there is no way to ascertain whether a party violated court orders without hearing evidence about when the various orders were made and what the content of the orders happened to be.

{¶ 55} In view of the fact that the Oakland Circuit Court suspended Mother's parenting time, rather than punishing Father, there is no possible way to assign blame to Father for the circumstances causing the suspension. Again, however, the record is devoid of evidence on this issue. In addition, even though Mother argues that Father refused to allow phone communication, the custody order of December 12, 2013 says nothing about telephone communication.

{¶ 56} As a final matter, Mother contends that the trial court erred in failing to address her request for attorney fees. Trial courts do have discretion to award attorney fees as part of the costs taxed to parties found guilty of civil contempt. *Planned Parenthood Assn. of Cincinnati, Inc. v. Project Jericho*, 52 Ohio St.3d 56, 67, 556 N.E.2d 157 (1990). However, the trial court had no reason to consider attorney fees, since it did not find Father guilty of contempt.

{¶ 57} Accordingly, the Second Assignment of Error is without merit and is overruled.


IV. The Child's Well-Being

{¶ 58} Mother's Third Assignment of Error states that:

Parents['] Wishes and the Failure of the Father to Address Mental

and Physical Well-Being and Physical Health of the Child Creat[e]s Threat to Child's Well-Being.

{¶ 59} As an initial matter, we note that the above statement is not properly phrased as an assignment of error. What Mother appears to be arguing is that the trial court failed to properly consider Father's alleged inattention to G.B.'s physical health and well-being. In this regard, Mother focuses on various matters, including Father's failure to grant her additional parenting time; his failure to promptly follow up with a family doctor after she had taken G.B. to the emergency room for constipation; the fact that G.B. was placed on an ADHD medication without Mother's input, and the fact that, in Mother's opinion, Father sends G.B. out in public and to school with holes in his shoes, which allegedly affects G.B.'s self-esteem.

{¶ 60} The magistrate's decision commented that G.B. was doing well educationally in school, and, despite some behavioral issues, had adjusted well. Moreover, the magistrate stated that "[n]o credible evidence was introduced to establish that the child was not adjusted to either his home, school, or community." Magistrate's Findings of Fact and Conclusions of Law, Doc. #44 at p. 1. Concerning G.B.'s health and ADHD, the magistrate also observed that:

The child has been diagnosed with ADHD and ODD but the symptoms have dissipated. Father follows through with recommendations and instructions related to the child's treatment. Father has issues with maintaining continuity of treatment.

Mother does not agree with the child's mental health diagnosis. The child is generally in good health.

{¶ 61} In rejecting Mother's objections, the trial court also mentioned these matters, including the fact that Mother did not agree with the medication that G.B. was taking and did not believe that G.B. had ADHD. Additionally, the court mentioned some issues with G.B.'s bowels, but did not find that Father paid improper attention to G.B.'s health or well-being. The trial court's decision cited to various parts of the record, and the court did consider Mother's allegations and testimony.

{¶ 62} Without going into laborious detail about the three volumes of testimony, Mother's claim of poor clothing, for example, relates to a visit she and her mother had with G.B. in January 2015 at Chick-Fil-A. This was prior to the time the case was registered in Montgomery County, Ohio. Father indicated that school was not in session that day, and that he took G.B. from daycare to visit with Mother. During the visit, Mother observed holes in G.B.'s shoes and took pictures of them.

{¶ 63} According to Father's testimony, G.B. wears a uniform to school, which Father irons every day. Father also stated that he buys G.B. two pairs of shoes every quarter, and when the next quarter begins, the shoes G.B. previously wore are used as play shoes if G.B. is around the house. No evidence was presented to contradict this testimony, and the dispute, in any event, is over a minor issue. This was true of most of Mother's complaints. As we noted, the parties have vastly different parenting styles and expectations.

{¶ 64} Again, the trial court was in the best position to judge credibility and assess the legitimacy of Mother's complaints. The record supports the trial court's conclusion that G.B. was generally in good health and was well adjusted to his school and community.

{¶ 65} Based on the preceding discussion, the Third Assignment of Error is overruled.

## V. Alleged Alienation

{¶ 66} Mother's Fourth Assignment of Error states as follows:

Preventing Mother's Involvement With Child by Father Is Totally Harmful to Child's Development and Living Conditions.

{¶ 67} Again, this assignment of error is improperly stated. From reading the brief, Mother appears to contend that Father improperly prevented her involvement with G.B., and that she is the appropriate person to safeguard G.B.'s development.

{¶ 68} The trial court commented that when Mother previously had legal custody of the child in Michigan, she did not follow court orders, which resulted in suspension of her parenting time. As a result, it appears that Mother's lack of involvement resulted primarily from her own actions. In addition, Father had previously been given physical custody of G.B. in 2013, due to Mother's improper conduct.

{¶ 69} In arguing that parental alienation occurred, Mother relies on the testimony of Dr. Angel, a mental health therapist who was licensed in North Carolina. Dr. Angel had been Mother's best friend for about 26 years, and the trial court was free to give her testimony whatever weight it considered appropriate.

{¶ 70} The court did not specifically discuss Dr. Angel, but did note Mother's testimony about her lack of contact with G.B., the parties' contentious relationship, and the fact that Father was unwilling to communicate with Mother. In this regard, the court noted comments we made many years ago about wars between "bitter parents" and the

fact that, in such a war, " 'the ultimate casualties are the children, who stand to suffer deeply and permanently unless their parents can learn to control their hostility and anger towards each other.' " Decision and Judgment Concerning Objections to the Decision of the Magistrate, Doc. #3 at p. 9, quoting *Bell v. Bell*, 2d Dist. Clark No. 97-CA-105, 1998 WL 288945, *1 (June 5, 1998). Regrettably, we have had to make such observations about parental wars many times. *See, e.g., Streidl v. Streidl*, 2d Dist. Montgomery No. 27165, 2017-Ohio-403, ¶ 32.

**{¶ 71}** The trial court ordered both parties to cooperate in enrolling G.B. in counseling and to follow the counselor's recommendations until further order of the court. This was appropriate. As the trial court observed, "both parents are appropriate and good parents, but * * * they let their personal feelings for each other dictate their actions, which affects their ability to act in the best interest of the child at times." Decision and Judgment Concerning Objections to the Decision of the Magistrate, Doc. #3 at p. 9.

**{¶ 72}** Accordingly, the Fourth Assignment of Error is without merit and is overruled.

## VI.   Honoring Parenting Time

**{¶ 73}** Mother's Fifth Assignment of Error states as follows:

Parent More Likely to Honor and Facilitate Parenting Time and Meet

All Needs of the Child for Development.

**{¶ 74}** As with the two prior assignments of error, Mother presents an improperly phrased assignment of error. Mother's contention here appears to be that she is the parent most likely to honor and facilitate parenting time and is the most capable person

to meet G.B.'s needs. As support for this argument, Mother presents a litany of complaints about Father's parenting and home environment, as well as his lack of cooperation with her.

{¶ 75} For the reasons previously discussed, this assignment of error is overruled. The GAL and trial court specifically concluded that Father was the parent more likely to honor and facilitate parenting time, and their conclusions are well-supported by the record. The court observed that Father does not communicate and that Mother over-communicates. In an attempt to make the parties learn to cooperate, the court imposed shared parenting.

{¶ 76} As for Mother's complaints about Father's home being in a "high-crime" area, her opinion was the only evidence offered to this effect. Mother also points to the GAL's testimony, which indicated that Father's house was cluttered and unorganized when the GAL visited. The GAL's report was made early in the case, in September 2015, and the GAL never reported on the conditions in Mother's home. Nonetheless, the GAL's main concern at the end of the May 2016 hearing was over the parties' inability to communicate with each other. For that reason, the GAL did not want to give Father sole legal custody. The magistrate and trial court agreed with the GAL that the parents should engage in shared parenting. As noted, the court hoped this would encourage the parties to begin cooperating and act in their child's best interest.

{¶ 77} In addition, we have already concluded that the trial court was not required to follow the GAL's recommendation for equal parenting time, and did not err in rejecting this idea. As the Supreme Court of Ohio stressed in *Davis,* "custody issues are some of the most difficult and agonizing decisions a trial judge must make. Therefore, a trial

judge must have wide latitude in considering all the evidence before him or her * * * – and such a decision must not be reversed absent an abuse of discretion." *Davis*, 77 Ohio St.3d at 419, 674 N.E.2d 1159. For the reasons previously expressed, we find no abuse of discretion. Again, the parties have different parenting styles, and the trial court did not find that Father's home environment was improper.

{¶ 78} Based on the preceding discussion, Mother's Fifth Assignment is without merit, and is overruled.

## VII. Conclusion

{¶ 79} All of Mother's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . .

HALL, P.J. and FROELICH, J., concur.

Copies mailed to:

James R. Kirkland
Ellen C. Weprin
Lori Cicero
Hon. Nick Kuntz