[Cite as *Streidl v. Streidl*, 2017-Ohio-403.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

ROGER E. STREIDL                          :
                                          :
    *Plaintiff-Appellee*          :     Appellate Case No. 27165
                                          :
v.                                        :     Trial Court Case No. 07-DR-09
                                          :
CINTHIA A. STREIDL                        :     (Appeal from Domestic Relations
                                          :     Court)
    *Defendant-Appellant*         :
                                          :

. . . . . . . . . .

O P I N I O N

Rendered on the 3rd day of February, 2017.

. . . . . . . . . .

PAUL J. WINTERHALTER, Atty. Reg. No. 0018799, 2700 Kettering Tower, Dayton, Ohio 45423
    Attorney for Plaintiff-Appellee

DAVID M. MCNAMEE, Atty. Reg. No. 0068582, 2625 Commons Boulevard, Suite A, Beavercreek, Ohio 45431
    Attorney for Defendant-Appellant

. . . . . . . . . . . .

WELBAUM, J.

**{¶ 1}** In this case, Defendant-Appellant, Cinthia Streidl, appeals from a trial court judgment finding her in contempt and imposing a jail sentence that could be purged by payment of $2,870 in attorney fees and costs to Plaintiff-Appellee, Roger Streidl.[1] In support of her appeal, Cinthia contends that the evidence did not support a finding of contempt. Cinthia additionally contends that she cannot be held responsible for paying attorney fees because Roger failed to prevail on all branches of his contempt motion and also failed to establish the portion of fees involved in litigating each branch.

**{¶ 2}** We conclude that the trial court did not abuse its discretion by holding Cinthia in contempt or in awarding Roger reasonable attorney fees and costs. Accordingly, the judgment of the trial court will be affirmed.

I. Facts and Course of Proceedings

**{¶ 3}** In August 2007, Roger and Cinthia were granted a final judgment and decree of divorce. A shared parenting decree filed at the same time provided for shared parenting and set out time periods during which the minor children of the marriage, S.S. and Sh.S., were to be in the custody of each parent. At the time, S.S. was five years old and Sh.S. was three years old. Since that time, the parents have filed numerous motions to modify parental rights and obligations, as well as motions for contempt. They are apparently unable to cooperate and agree on even minor matters affecting the welfare of their children. Most of these motions have ultimately ended in agreed orders, but only after court intervention and expenditure of many thousands of dollars in attorney fees.

---

[1] For purposes of convenience, we will refer to the parties by their first names.

{¶ 4} In the original parenting plan, Roger was the residential parent for the children on Tuesday and Thursdays. The remainder of parenting time for the parties was in accordance with the court's standard order of parenting time. The plan also provided that each parent would have a first right to care for the children if the other parent were not able to watch the children for a period in excess of four hours. Among other things, the parties were to confer on all matters of importance relating to the children's health and education. Each parent was also to have full access to all records pertaining to the children.

{¶ 5} In December 2009, an agreed order was filed changing the hours of parenting time, and further providing that, to the extent possible, Cinthia was not to schedule the children's activities during Roger's parenting time. In 2011, Roger filed a motion to modify parenting time and for contempt, and Cinthia filed a motion to modify parental rights. Another agreed order was filed on November 6, 2012, indicating that the parties should continue to follow the shared parenting plan. In addition, the order modified the plan so that Roger would be entitled to exercise parenting time every weekend as scheduled, and would have additional parenting time every weekend Cinthia worked, from 9:00 a.m. until 30 minutes after she got off work.

{¶ 6} The agreed order contained further pertinent provisions, as follows:

4. The children shall be timely transported to any and all activities by both parents during his or her parenting time, and the children shall not be deprived of the ability to participate due to parenting time issues;

* * *

7. Each party shall provide the other party promptly of any

extracurricular schedules, including name and contact information for the instructor, leader, or coach; and

8. In the event the parties disagree about medication or any other major medical needs of one of the children, they shall defer to the treating professional, and both parents shall keep the other parent apprised of any and all appointments, sessions, or evaluations, and attempt to schedule the same so the other parent can be present.

* * *

10. The current schedule is based upon the Mother's work schedule. In the event there is an occasional Saturday that the Mother does not work, and she exercises parenting time, the Father shall be entitled to make up parenting time for the missed parenting time. The parties understand that if the Mother's work schedule changes permanently this parenting schedule may need to be modified * * *.

November 6, 2012 Agreed Order, Doc. #159, p. 2.

{¶ 7} In April 2014, Roger filed another motion to modify parenting time and to show cause. This motion asked for an order requiring Cinthia to provide Roger with her work schedule, and alleged that she had failed to confer or consult with him on health care matters, had failed to allow him to exercise the right of first refusal regarding parenting time, and had failed to notify and/or provide him with notice of extracurricular activities and schedules.

{¶ 8} Another agreed order was filed in September 2014. This order provided that the parties would continue to be bound by the shared parenting agreement, and added

the following pertinent modifications:

3. Both parties shall notify the other immediately upon making of any and all appointments for the minor children regarding medical, dental, optical or psychological treatment and attempt to schedule the same so that the other party can be present if he or she chooses. Should there be any change of any health care providers regarding the children's care, the party making the change shall notify the other parent immediately. This notification shall pertain to all matters, sessions or appointments regarding the education of the minor children.

4. The parties shall notify the other party immediately of any extra-curricular activity schedules, contact information, coaches and all other matters pertaining to extra-curricular activities. Both parties are required to consult with the other before their children are enrolled in any extra-curricular activities.

5. Each party shall continue to have the right of first refusal to have the minor children should the other party during their parenting time not be able to be with the minor children for a period in excess of four (4) hours.

6. If either party fails to perform any of the terms, provisions or obligations herein set forth and it becomes necessary to institute legal proceedings by way of a Motion to Show Cause to effectuate the performance of any provisions of this Agreed Order, then the party found in contempt shall pay all expenses including reasonable attorney fees and court costs incurred in connection with such an enforcement.

7.    Plaintiff hereby withdraws his Motion for Contempt and Request for Attorney Fees filed herein.

September 26, 2014 Agreed Order, Doc. #182, p. 2.

{¶ 9} In May 2015, Cinthia filed a motion to modify parenting time, increase child support, modify the tax exemption, and modify the dependent healthcare order. Subsequently, in July 2015, Roger filed a motion to modify the healthcare order, modify the summer parenting time, and to show cause.   The show cause motion contained four branches alleging that Cinthia had: (1) failed to notify Roger upon making healthcare appointments for their minor child; (2) failed to let Roger exercise his right of first refusal regarding parenting time; (3) failed to notify and/or consult with Roger regarding extracurricular activities; and (4) failed to provide Roger with parenting time required by the shared parenting order.   Branch V of the motion to show cause asked for attorney fees and costs.

{¶ 10} A hearing was held on September 9, 2015.   Roger was the only witness. Cinthia appeared for the hearing, with counsel, but did not testify or offer any exhibits.

{¶ 11} Prior to hearing testimony, the court indicated that the parties had reached agreement as to all pending issues other than the motion to show cause.   The parties also stipulated as to the amount and reasonableness of Roger's attorney fees ($2,640) and court costs ($230), although Cinthia did not admit responsibility for the fees and costs.

{¶ 12} Regarding the motion to show cause, Roger testified to the following matters.   In September 2014, he attended an orthodontist appointment for an evaluation regarding braces for the parties' minor child, S.S.   At that time, the orthodontist indicated it was a "wait and see" situation, where a reevaluation would occur in six to twelve months.

Roger was not thereafter aware of any subsequent discussion about orthodontia or any further appointments.

**{¶ 13}** On a Sunday in April 2015, Roger received an automated message from the orthodontist's office, after Roger had arrived in Minnesota for a business trip. The message indicated that S.S. had an appointment the following day to have braces put on. Roger called and canceled the appointment because he had not been there at any time to obtain information from the orthodontist about the care plan.

**{¶ 14}** Roger also testified that he had not been notified of other appointments, including S.S.'s appointment to get shots and a physical for school. He learned of the appointment after the fact, from his son. Roger also indicated that Cinthia had made appointments with a psychologist but had not notified him, and at other times, had given him such short notice that he could not leave work to attend the appointment.

**{¶ 15}** Regarding the second branch of the motion, Roger testified that in the eight years since the parties had been divorced, Cinthia had never called and asked him to take care of the children when she was working or going to school. He stated that he had been to Cinthia's house several times on weekends and Cinthia's mother was there, taking care of the children. He stated that Cinthia did work on weekends, and as far as he knew, worked a 12-hour shift from 7:00 a.m. to 7:00 p.m.

**{¶ 16}** Concerning the third branch, Roger testified that Cinthia had failed to provide him notice of any extracurricular activities. The children had been involved in seven or eight activities over the past year, and Cinthia had never notified him that she was going to enroll the children.

**{¶ 17}** Regarding the fourth branch (denial of parenting time) Roger testified that

in July 2015, Cynthia had notified him, at 11:45 p.m. the night before his Wednesday visitation, that she had enrolled S.S. in a Go Carting camp and that S.S. would not be available for visitation the next day. Roger also testified as to an incident that occurred when he informed Cinthia that he had a dentist appointment and would be a little late picking up the children. Cynthia texted him at 3:30 and told him that she and the children had things to do, and that she would count this as a forfeit of his parenting time. Roger arrived at 4:45 p.m. to pick up the children, and no one was home.

{¶ 18} Roger further related an incident where S.S. had a school dance on a Friday, which would have been during Roger's normal parenting time. When he arrived at 4:30 p.m. (his normal time), Cinthia came out of the house and told him that S.S. was not coming, that S.S. was going to a dance at 8:30 p.m. Roger offered to take S.S. to the dance, but Cynthia refused, and also refused to let him pick S.S. up after the dance was over.

{¶ 19} During cross-examination, Roger indicated that he did not believe the children were over-involved in activities, and that the activities were in their best interest. He also stated that he had received extra time with S.S. the weekend before the hearing, which equaled the time he had missed due to the Go Carting camp.

{¶ 20} In early December 2015, the magistrate issued a decision granting Branches I, III, and V of the motion to show cause. The magistrate found Cinthia in contempt for failing to notify Roger of all medical appointments for S.S., and technically in contempt for failing to notify Roger about extra-curricular activities of the children. Branch II, relating to right of first refusal was denied, based on the magistrate's conclusion that the evidence was insufficient to reflect that Cynthia was at work and how long she

was away from the children. Concerning Branch IV (denial of parenting time), the magistrate concluded that Roger could have scheduled his dental appointment for a time other than during his parenting time and that Cinthia was not required to wait since he was going to be one hour late. As to the denial of parenting time in connection with the dance, the magistrate concluded that there was no violation because S.S. wanted to get ready for the dance at home and attend with his friends.[2]

{¶ 21} The magistrate sentenced Cinthia to three days in jail for the contempt, and further concluded that Cinthia could purge the contempt finding by paying Roger his attorney fees and costs within three months of the magistrate's decision. Cinthia filed timely objections to the magistrate's decision, and also filed supplemental objections after the transcript of the hearing was filed.

{¶ 22} On June 13, 2016, the trial court overruled Cinthia's objections and concluded that Cinthia was in contempt of court. The court sentenced her to three days in jail, which, again, could be purged by her payment of Roger's attorney fees and costs. Cinthia then filed a timely appeal from the trial court's decision.

II.   Whether Evidence Supported the Contempt Decision

{¶ 23} Cinthia's First Assignment of Error states that:

The Trial Court Erred in Sustaining the Magistrate's Decision Finding the Defendant in Contempt Because the Evidence Presented Did Not Support a Finding of Contempt With Respect to These Matters.

---

[2] Roger did not object to the magistrate's decision and has not appealed the denials of these two branches of his motion. We note that no evidence was presented at the hearing to support the magistrate's conclusion about the dance.

{¶ 24} Under this assignment of error, Cinthia contends that the trial court abused its discretion in finding her in contempt because Roger failed to meet his burden of proof. In particular, Cinthia focuses on the fact that Roger did not prove when the orthodontist appointment was made, and argues that nothing prevented Roger from contacting the orthodontist. Cinthia also argues that Roger failed to meet his burden of proof regarding extracurricular activities because it is "unclear" what his complaints were, since he agreed that the activities are beneficial to the children.

{¶ 25} Courts have certain inherent powers to ensure "the orderly and efficient exercise of justice * * *." (Citations omitted). *Zakany v. Zakany*, 9 Ohio St.3d 192, 194, 459 N.E.2d 870 (1984). These powers include "the authority to punish the disobedience of the court's orders with contempt proceedings." (Citations omitted.) *Id.*

{¶ 26} "Civil contempt is a remedy whereby an aggrieved party to a lawsuit can enforce a civil remedy and thereby protect its rights. * * * A finding of civil contempt requires clear and convincing evidence that the alleged contemnor has failed to comply with the court's prior orders. * * * In order to be clear and convincing, evidence must leave the trier of fact with the firm conviction or belief that the allegations involved are true. *Cross v. Ledford* (1954), 161 Ohio St. 469, 53 O.O. 361, 120 N.E.2d 118." (Citations omitted.) *Moraine v. Steger Motors, Inc.*, 111 Ohio App.3d 265, 268, 675 N.E.2d 1345 (2d Dist.1996).

{¶ 27} We review trial court orders in contempt cases for abuse of discretion. *State v. Chavez-Juarez*, 185 Ohio App.3d 189, 2009-Ohio-6130, 923 N.E.2d 670, ¶ 56 (2d Dist.). "A prima facie case of civil contempt is made when the moving party proves both the existence of a court order and the nonmoving party's noncompliance with the

terms of that order." (Citations omitted.) *Wolf v. Wolf*, 1st Dist. Hamilton No. C-090587, 2010-Ohio-2762, ¶ 4. *Accord Hoagland v. Hoagland*, 2d Dist. Miami No. 2014-CA-30, 2015-Ohio-2426, ¶ 6. "The burden then shifts to the nonmoving party to establish a defense for its noncompliance." *Wolf* at ¶ 4.

{¶ 28} After reviewing the record, we find that the trial court did not abuse its discretion, and that there is more than adequate evidence to support the contempt finding.

{¶ 29} The original shared parenting plan and decree stated that "[o]n all matters of importance relating to the children's health and education, the parties shall confer regarding this matter." Final Decree of Shared Parenting, Doc. #33, p. 6. The undisputed testimony at the hearing indicated that Cinthia failed to confer with Roger about the decision to proceed with S.S.'s braces. The last notice Roger had was that the matter would be reevaluated in six to 12 months.

{¶ 30} Furthermore, the latest agreed order stated that "[b]oth parties shall notify the other *immediately* upon making of any and all appointments for the minor children regarding medical, dental, optical or psychological treatment and attempt to schedule the same so that the other party can be present if he or she chooses." (Emphasis sic.) September 26, 2014 Agreed Order, Doc. #182 at p. 2. Roger was unaware until he received an automated message from the orthodontist on a Sunday, when he was out of town, that his son's braces were being fitted the next day. Roger never received notice from Cinthia. Logic indicates that an orthodontist would not, of his or her own accord, schedule an appointment to put on braces without previously having consulted with a responsible party, particularly since the prior agreement was that the matter would be reevaluated at a later time.

**{¶ 31}** Since Cinthia obviously had subsequent discussions with the orthodontist and was the parent who would have made the appointment, she violated the terms of the shared parenting agreement and agreed order. Furthermore, this was not an isolated event, given the testimony and the voluminous filings in the case (237 docket entries to date for a case involving minimal property issues and no evidence that either parent had abused, neglected, or improperly treated the children).

**{¶ 32}** In this regard, comments we have made numerous times in the past are worth repeating. In *Buckingham v. Buckingham*, 2d Dist. Darke No. 1626, 2004-Ohio-1942, we commented that the case before us, "like many others, involves an ongoing war between divorced and bitter parents. As we have stressed in the past, such wars have 'no victors and the ultimate casualties are the children, who stand to suffer deeply and permanently unless their parents can learn to control their hostility and anger towards each other.' " *Id*. at ¶ 3, quoting *Bell v. Bell,* 2d Dist. Clark No. 97-CA-105, 1998 WL 288945, *1 (June 5, 1998).

**{¶ 33}** In *Bell*, we emphasized that "children have certain rights, including ' "the *right to love each parent*, without feeling guilt, pressure, or rejection; the right not to choose sides; *the right to have a positive and constructive on-going relationship with each parent*; and most important * * * *the right to not participate in the painful games parents play to hurt each other or to be put in the middle of their battles*." ' " (Emphasis added.) *Id*. at *1, quoting *Thomas v. Freeland*, 2d Dist. Greene No. 97-CA-06, 1997 WL 624331, *3 (Oct. 10,1997).

**{¶ 34}** There was also undisputed evidence that Cinthia violated the shared parenting agreement and the agreed orders with respect to the children's extra-curricular

activities. The shared parenting agreement and decree required both parties to "exert every reasonable effort to maintain free access and unhampered contact between each of them and the children." Final Decree of Shared Parenting, Doc. #33 at p. 6. The Agreed Order filed in 2012 further required that "[e]ach party shall provide the other party promptly of any extracurricular schedules, including name and contact information for the instructor, leader, or coach." November 6, 2012 Agreed Order, Doc. #159 at p. 2.

{¶ 35} When this apparently did not suffice and further motions were filed, another agreed order was filed in September 2014, requiring that "[t]he parties shall notify the other party immediately of any extra-curricular activity schedules, contact information, coaches and all other matters pertaining to extra-curricular activities. *Both parties are required to consult with the other before their children are enrolled in any extra-curricular activities.*" (Emphasis added.) September 26, 2014 Agreed Order, Doc. #182 at p. 2.

{¶ 36} Roger's undisputed testimony at the hearing was that the children had been involved in many extra-curricular activities over the past year, and that Cinthia had never notified him that she was going to enroll them. This directly violated the agreed orders, and we disagree with the trial court's finding that this was merely a technical violation. The obvious purpose of these orders is to ensure that one parent is not isolated from decision-making with respect to the children. For this reason, Cinthia's argument is also beside the point. Even if the activities were beneficial (in hindsight), the agreed order requires Cinthia to consult with Roger before enrolling the children in extra-curricular activities. She failed to do so or to notify him, and, therefore, violated the court's orders.

{¶ 37} Accordingly, the trial court did not err when it found Cinthia in contempt. The First Assignment of Error is overruled.

### III.   Imposition of Attorney Fees and Costs

**{¶ 38}** Cinthia's Second Assignment of Error states that:

Appellee Failed to Establish What Portion of the Attorney Fees Were

a Result of Which Branch, and Therefore, the Appellant Cannot Be Held

Responsible for Any of the Cost.

**{¶ 39}** Under this assignment of error, Cinthia contends the trial court erred in requiring her to pay all of Roger's attorney fees, because Roger did not prevail on all his claims, and failed to prove which fees are attributable to the portions on which he prevailed.

**{¶ 40}** "A trial court may, within its discretion, include attorney fees as part of the costs taxable to a defendant found guilty of civil contempt."   (Citation omitted.)   *Planned Parenthood Assn. of Cincinnati, Inc. v. Project Jericho*, 52 Ohio St.3d 56, 67, 556 N.E.2d 157 (1990).   *Accord Hoagland*, 2d Dist. Miami No. 2014-CA-30, 2015-Ohio-2426, at ¶ 18.   We review attorney fee awards for abuse of discretion.   *Hoagland* at ¶ 18.

**{¶ 41}** An abuse of discretion is "an attitude that is unreasonable, arbitrary or unconscionable."   (Citation omitted.)   *AAAA Enterprises, Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).   "[M]ost instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary."   *Id.*   "A decision is unreasonable if there is no sound reasoning process that would support that decision." *Id.*

**{¶ 42}** We find no abuse of discretion.   Not only did the trial court have discretion

to award attorney fees for contempt, it was required to do so, based on the agreed order the parties filed in September 2014. As noted above, the provision in the agreed order provided that:

> If either party fails to perform any of the terms, provisions or obligations herein set forth and it becomes necessary to institute legal proceedings by way of a Motion to Show Cause to effectuate the performance of any provisions of this Agreed Order, then the party found in contempt shall pay all expenses including reasonable attorney fees and court costs incurred in connection with such an enforcement.

**{¶ 43}** The agreement refers to "*all* fees * * * incurred in connection" with the enforcement of any provisions of the agreed order. It does not refer to splitting fees based on whether a party prevails on all of several contempt claims that have been brought. In rejecting Cinthia's objections to the magistrate's decision and the payment of all attorney fees requested, the trial court specifically relied on this provision and stated that it "provides [for] the award of fees in the event that a Motion to Show Cause is necessitated for <u>any</u> failure to obey an order of the court." (Underlining sic.) Decision and Judgment, Doc. #233, p. 6.

**{¶ 44}** However, even if this were otherwise, and even though Roger did not prevail on all the listed grounds for contempt, his attorney was still required to file the paperwork and prepare for and conduct an evidentiary hearing.

**{¶ 45}** Furthermore, even if the agreement did not require payment of all fees, strict enforcement of the attorney fee provision was required to ensure that Cinthia would stop resisting orders to which she had freely agreed. In this regard, we note Roger's

unchallenged testimony that in the eight years since the divorce, Cinthia had not once called to allow him a right of first refusal when she was working. Although this branch of Roger's motion was inexplicably denied and not appealed, the history of the action indicates no doubt that Cinthia worked on Saturdays, and the trial court would have been aware of this and Roger's repeated attempts to obtain compliance. *See* September 15, 2011 Motion to Modify Parenting Time and to Show Cause, Doc. #107, p. 2 (Roger asks for weekend parenting time, stating that it would not interfere with Cinthia's time because she worked weekends); December 27, 2011 Amended Motion, Doc. #130, p. 2 (alleging that Cinthia was permitting the children to stay with grandparents on weekends rather than allowing them to stay with Roger);[3] November 6, 2012 Agreed Order, Doc. #159, pp.1 and 2 (allowing Roger additional time every Saturday that Cinthia worked, from 9:00 a.m. until 30 minutes after she got off work, and further allowing Roger additional parenting time on the "occasional" Saturday that Cinthia did not work); April 22, 2014 Motion to Modify Parenting Time, to Require Mother to Provide Work Schedule to Father; Motion to Show Cause, Doc. #161 (asking for a contempt finding against Cinthia for, among other things, refusing to allow him to exercise the right of first refusal).

{¶ 46} Again, while Roger did not appeal the decision on the denial of right of first refusal, the trial court would have been aware of the history of the case. The amount of attorney fees, which were stipulated as reasonable, were $2,640. This was a minimal amount, given the history of the case.

{¶ 47} Under the circumstances, we find no abuse of discretion by the trial court in

---

[3] The motions were supported by Roger's affidavit, attesting that the content of the motions was true.

the award of fees and costs.   As a result, the Second Assignment of Error is overruled.


## IV.   Conclusion

{¶ 48} All of Cinthia's assignments of error having been overruled, the judgment of the trial court is affirmed.


. . . . . . . . . . . . .


DONOVAN, J. and FROELICH, J., concur.


Copies mailed to:

Paul J. Winterhalter
David M. McNamee
Hon. Denise L. Cross