[Cite as *In re G.D.B.*, 2020-Ohio-5539.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

|                    |     |                                           |
| ------------------ | --- | ----------------------------------------- |
|                    | :   |                                           |
|                    | :   |                                           |
| IN RE: G.D.B.      | :   | Appellate Case No. 28844                  |
|                    | :   |                                           |
|                    | :   | Trial Court Case No. 2015-3161            |
|                    | :   |                                           |
|                    | :   | (Appeal from Common Pleas                 |
|                    | :   | Court – Juvenile Division)                |
|                    | :   |                                           |
|                    | :   |                                           |

. . . . . . . . . . .

O P I N I O N

Rendered on the 4th day of December, 2020.

. . . . . . . . . . .

JAMES KIRKLAND, Atty. Reg. No. 0009731, 10532 Success Lane, Dayton, Ohio 45458
    Attorney for Plaintiff-Appellant Mother

ELLEN WEPRIN, Atty. Reg. No. 0042354, 90 East Franklin Street, Bellbrook, Ohio 45305
    Attorney for Defendant-Appellee Father

. . . . . . . . . . . . .

DONOVAN, J.

{¶ 1} Mother appeals from a judgment of the juvenile court that declined to hold Father in contempt regarding her parenting time with the parties' minor child, G.D.B., and Fahter's payment for counseling services and granted Father's motion for child support. We hereby affirm the judgment of the juvenile court. to hold Father in contempt and granted Father's motion for child support

{¶ 2}  Previously, in ruling on the same motions for contempt and child support, the juvenile court denied Mother's motions without a hearing.   Specifically, Mother's motions had asserted that: 1) Father failed to "pay his share of the minor child's counseling fees," 2) Father denied Mother parenting time on April 12 and the weekend of April 14-16, 2017 and "had the child for two weeks during the child's spring break," and 3) Father denied Mother parenting time on May 24, 2017, and over the Memorial Day weekend of 2017.   Mother appealed from the juvenile court's judgment.

{¶ 3} On appeal, we held that the juvenile's court had abused its discretion in ruling on the parties' motions without conducting an evidentiary hearing on any of them. *In re G.B.*, 2d Dist. Montgomery No. 27992, 2019-Ohio-236, ¶ 1.[1]   In that case, we described the background of the case as follows:

> Mother and Father's son, G.B., was born in 2008. The parents' litigation has a complicated history, which we reviewed in *In re G.B.,* 2d Dist. Montgomery No. 27601, 2017-Ohio-8418. This court noted that a circuit court in Oakland County, Michigan originally exercised jurisdiction over this matter, when Mother lived in Michigan.   Pursuant to a 2013 order of the

---

[1]  The same child is at issue in multiple cases, but the child was referred to in the previous cases as "G.B."   Because the current case is captioned "G.D.B.," we refer to the child by those initials in this case.

Michigan court, Father had custody of G.B. and Mother had parenting time. In May 2015, Mother filed a petition to register a foreign order in the Montgomery County, Ohio juvenile court pursuant to the Uniform Child Custody Jurisdiction and Enforcement Act. By mid-2015, Mother had moved to Ohio, and the Montgomery County juvenile court had accepted jurisdiction over matters related to G.B.'s parenting. In the 2017 Opinion, this court affirmed the juvenile court's April 26, 2017 judgment, which overruled Mother's contempt motion, implemented shared parenting, designated Father as the residential parent, and granted Mother visitation with G.B. pursuant to the juvenile court's standard order of visitation.

*Id.* at ¶ 2.

{¶ 4} After we reversed and remanded the juvenile court's prior judgment for its failure to conduct a hearing, the juvenile court magistrate held a hearing on August 13, 2019 on Father's motion for child support and Mother's three motions to show cause why Father should not be held in contempt.

{¶ 5} At the hearing, Father testified that he was G.D.B.'s residential parent and Mother had visitation pursuant to the standard order, which was every Wednesday from 6:00 to 9:00 p.m. and every other weekend. Father stated that he had been employed at Eli Lilly since September 17, 2018, as a sales representative, earned $92,500 a year, with a quarterly bonus, and that his last bonus check was $3,500 in June 2019; his total income was "anywhere from 100 and $105,000 for the year."

{¶ 6} Mother testified that she worked for a research company, making $115,000 per year. She stated that, for a couple of years, she had exercised parenting time with

G.D.B. on "Wednesday and Thursday nights and alternating weekends." She recognized that "[n]obody ordered it. It's just been what we've been doing." Mother also testified that she had had G.D.B. for several weeks when Father went away for business. Mother stated that she had another child who had recently graduated from college.

{¶ 7} Mother testified that she had started her current employment in November 2018. She stated that, at the time of the August 2019 hearing, she had recently been diagnosed with "blood clots and edema" and was on a travel restriction. Mother testified that she did not qualify for long term disability at work because she has not been at her company for one year. Mother testified that she had not been terminated and did not know when she would return to work. When the magistrate asked if she was still employed by the company with an annual salary's $115,000 a year, Mother responded, "Yes."

{¶ 8} Regarding her motions to show cause, Mother testified that her March 31, 2017 motion was addressed to the payment of counseling services for G.D.B. She stated that she scheduled the counseling appointments, took her son to them, and paid for the appointments through her insurance. Mother testified that she provided copies of the bills to Father but that he had not reimbursed her.

{¶ 9} Regarding parenting time, Mother testified that January 6, 2017, was her first weekend of parenting time of the year. Mother testified that she requested parenting time the following weekend, January 13-14, 2017, as evidenced by a text message exchange between her and Father (Exhibit 2) but Father replied that the weekend she requested "was not [her] weekend for visitation."

{¶ 10} Mother stated that her April 26, 2017 motion to show cause was addressed

to the dates of April 12, 14, 15, and 16, 2017, when Father denied her parenting time; her motion of June 22, 2017, was addressed to the dates of May 24, 26, 27, 28, and 29, 2017, when she was also denied parenting time.[2]  Mother presented as Exhibit 3 a photo of a Chic-fil-A receipt in her hand, which reflected a date of April 14, 2017 at 3:04:22 p.m. and the digital clock in her car showing a time of 3:22; according to Mother, Exhibit 3 established that she was waiting at Chick-fil-A on that date and time for Father to bring their son, and she "waited for 20 minutes."  Mother acknowledged that April 16, 2017 was Easter, and that it was Father's holiday, but she stated that she was denied parenting time on the previous Wednesday, Friday and Saturday.  She testified that Chick-fil-A had been the parties' previous exchange location, but at the time of the hearing they made the exchanges by picking the child up at the end of the school day.

{¶ 11} Mother testified that, pursuant to the standard order, she was supposed to have G.D.B. on Memorial Day weekend 2017.  She presented copies of text messages that she testified she sent to Father on May 26, 2017, asking him to bring the child to her at 3:00 p.m. the following day, and a message that she sent at 6:24 p.m. on May 27 indicating that she was still waiting for the child (Exhibit 4).  Mother testified that Father did not offer her any make-up parenting time for the missed holiday weekend.

{¶ 12} Mother identified email correspondence between her and Roslyn Prigg of Healing Waters, who had provided counseling services to G.D.B. (Exhibit 5).  The email

---

[2] The record reflects that Mother filed an "Amended Motion to Show Cause" on January 10, 2018, subsequent to the filing of the prior appeal.  The amended motion claimed that Mother was denied parenting time on January 3, 2018, and January 5-7, 2018, that Father failed to take the child to his extra-curricular activities as "per previous orders of the Court," and that Father continued "to be physical with the minor child" and failed to co-parent as ordered by the court. However, the magistrate indicated that the August 13, 2019 hearing was only to address the issues on remand from this court.

was dated January 18, 2017. Mother's message stated:

> Again, I apologize [G.D.B.] was not brought in for his most recent counseling appointments.
>
> Please advise me of your next available appointment for [G.D.B.]. He's with me tonight at 6pm if you can squeeze him in. Or Saturday & Sunday. I can ensure he comes.
>
> Additionally, has [Father] paid you or provided his insurance card since our last meeting? If not, as you requested, I will pay the outstanding balance. Please confirm if its $200 or has increased.

{¶ 13} Mother then requested that Prigg print the bill and attendance sheet. Mother testified that she sent Father a text the day before and day of each appointment with Prigg. Mother testified that she "had to pay cash for full sessions when [Father] no showed" for G.D.B.'s appointments. Mother identified an email that Father sent to Prigg December 6, 2016 stating that he "withdrew his participation from counseling" (Exhibit 16). Mother testified that Prigg subsequently "terminated us" as clients.

{¶ 14} Mother testified that she took G.D.B. to his basketball practices and games, but Father did not, and that G.D.B. "was kicked off the basketball team" because Father did not take him.

{¶ 15} Mother testified that she did not receive parenting time the first Wednesday in January and the first weekend in January 2018. She identified Exhibit 13-A as an email exchange between Father and her. In an email dated January 5, 2018, Mother wrote: "The Holiday schedule ended 01Jan which returned us to the regular schedule. You No-Showed my Wednesday and I'm waiting on you now for my Friday pick up. The

time is 6:15." Father responded as follows on January 6, 2018: "We know that the holiday schedule is over on January 1st. You didn't show up for your parenting time on Wednesday, so you missed your parenting time. * * *." Mother identified Exhibit 15 as a January 5, 2018 Chick-fil-A receipt at 6:32.54, to document that she was there; she testified that Father did not bring the child to the restaurant that day.

{¶ 16} Mother identified Exhibit 17 as a Dayton Early College Academy 2017- 2018 Calendar, which showed the school's holiday schedule. Mother testified that G.D.B. was not on spring break during the dates of April 14-16, 2017, and that spring break occurred that year from March 19-April 4.

{¶ 17} Mother identified Exhibit 18-A as a printout of a counselor's bill, directed to Mother's address, reflecting charges paid in the amount of $600. Mother stated that the counselor did not take her insurance so she paid the balance in cash. Mother stated that she told Father of the bill and did not receive money from him. She had requested $300.

{¶ 18} Mother identified Exhibit 20 as a patient account ledger from Prigg for G.D.B.'s treatment from July 12, 2016 through May 16, 2017. It listed Mother's name and billing address. Finally, Mother identified Exhibit 21 as her analysis of Exhibit 20; Exhibit 21 had columns entitled "Date," "Description," "Amount," "Insurance/Adjustments," and "Missed Apts. by Father." Mother testified that the total amount due to Prigg was $2,297.25, of which insurance covered $1,178.95, leaving a balance of $1,118.30, which she had paid. She testified that, of the amount she had to pay, $747.50 was attributable to no-shows by Father, for which no insurance could be applied. Mother also testified that $370.80 was supposed to be split between her and Father. According to Mother, adding $747.50 for Father's no shows and half of the "new total" of $370.80 ($185.40)

totaled $932.90 that Father owed for counseling.

{¶ 19} On cross-examination, Mother testified that she kept G.D.B. overnight on Wednesdays pursuant to an agreement with Father. She also stated that Prigg had handed bills to Father "on the few days that he did show up before he quit." When asked about her billing address appearing on Exhibit 18, Mother responded, "[t]hat's not the billing information. This is the address of me signing him in." Mother acknowledged that her attorney's staff created Exhibit 21. Mother testified that Father withdrew his participation in counseling on December 6, 2016. When asked why Exhibit 21 reflected missed appointments after that date, Mother responded, "[t]hey were still assigned to him" and during his parenting time.

{¶ 20} On re-cross-examination, Mother stated that she did not know that Father had stopped participating in counseling until the following March. Mother also stated that she and Father signed a contract with Healing Waters, but that she did not bring a copy of it to court.

{¶ 21} Father testified that Mother was not denied parenting time. He stated that his understanding was that Mother had the child every Wednesday from 6:00 to 9:00 and every other weekend. Father stated that he and Mother argued every year about when her parenting time began each January. He stated that he had G.D.B. for spring break in 2017. Father testified that Mother had G.D.B. on the 7th, 8th, and 9th of April 2017, and that she took him to school on the 10th without returning him. He stated that he picked the child up at school and had him the following weekend. Father testified that he had the child April 12, 2017, until 6:00 p.m. and then gave the child to Mother. With respect to the May 2017 dispute, Father stated that on May 24, 2017, Mother had G.D.B.

and kept him overnight because there was a tornado warning in Fairborn where she lived; Father picked the child up the next day at school, and the following weekend was his weekend pursuant to the schedule. Father stated that Memorial Day 2017 was Mother's holiday from 9:00 a.m. to 9:00 p.m., and he dropped G.D.B. off for Mother's visitation.

{¶ 22} Father stated that he had not received any invoices for counseling services; Mother scheduled all of the appointments and text-messaged him the dates and times. According to Father, "[i]t was usually a last minute communication" from Mother regarding the day and time of the appointment. Father stated that, if he had G.D.B., he would take him to the appointment, but sometimes he did not because of the last-minute nature of the communication. "You know, you can't schedule an appointment at 3:00 and text somebody at 2:30, well, he's got an appointment at 3:00." Father testified that Prigg never communicated with him directly about the day and time of an appointment and that he did not discuss paying for the services with her. Father stated that he paid Prigg $80 one time when he took G.D.B. to an appointment. When asked why he refused to participate in counseling, Father stated that he felt there was too much confusion in regard to scheduling, it was often last minute, and "it was a frustrating situation." Father stated that he decided to "mitigate all the confusion" for Prigg and her practice by asking her to schedule only times when Mother would be able to take G.D.B. Father testified that Prigg had his address, but he never received a bill from her, and that he had had insurance since September 17, 2018.

{¶ 23} On cross-examination, Father testified that G.D.B. had spring break in March, which encompassed two of Mother's weekends. He also stated that he did not recall signing a contract with Prigg.

{¶ 24} With respect to the child's counseling bills, the magistrate observed that Mother claimed to have provided Father with copies of invoices for the counseling, Father denied that he had received any invoices, and Mother "produced no documentary evidence to support her allegations." The magistrate found that both Mother and Father were credible, but "[t]herefore, Mother failed to meet her burden of proof." The magistrate found that Mother had presented no evidence that there was a "contractual obligation" to pay for missed counseling sessions. The magistrate ordered Father to pay Mother $185.40 for his share of the counseling expenses provided by Healing Waters and $70.00 for his share of the counseling costs incurred through January 10, 2018, but it did not hold him in contempt for failure to pay for counseling.

{¶ 25} With respect to parenting time, the magistrate made three findings. First, the magistrate found that Mother had parenting time pursuant to the court's standard order of parenting time. In 2017, April 14 was a Friday, and pursuant to the standard order, her parenting time did not start until 6:00 p.m. that day. Therefore, the magistrate found that Father did not commit a contemptuous act on that day. Second, the magistrate found that the standard order required the non-residential parent to provide transportation of the child to and from that parent's home for parenting time, but Mother did not present any evidence that she arrived at Father's home on Fridays at 6:00 p.m. or every other Wednesday at 6:00 p.m. Rather, she merely alleged that she did not have parenting time on certain dates. Mother presented no evidence that she went to Father's home to pick up G.D.B. to exercise her parenting time on those dates and that the child either was not there or Father refused her parenting time. The magistrate noted that the parties may have agreed to alter the terms and conditions of the court's standard order

concerning drop off and pick up, but it found that Father's failure to comply with the parties' separate agreement was not a violation of the court's order. Third, the magistrate found that Mother failed to present any evidence that Father had not taken G.D.B. to his extracurricular activities. For these reasons, Mother's motion to find Father in contempt was denied.

{¶ 26} Mother filed objections to the magistrate's decision on August 27, 2019. She objected to the following: the calculation of the child support amount, because it did not include Father's bonuses; the amount Father was ordered to pay for counseling; the magistrate's failure to take into account "expenses as documented by the Mother in her Affidavit of Income and Expenses," including child care required for Mother to work and expenses associated with Mother's daughter who was a college student; the magistrate's failure to "adjust Mother's income to 60% disability amount" based on her medical conditions; and the magistrate's findings with respect to parenting time. Mother supplemented her objections on October 22, 2019.

{¶ 27} In addressing Mother's objections, the juvenile court noted that Father's bonuses were not included in the child support calculation and stated that his gross annual income should include his anticipated bonuses; child support was recalculated accordingly. The court further found that, at the time of the hearing, Mother was still employed and expected to earn $115,000 for 2019; Mother was not terminated by her employer and had not had her salary reduced. As such, the court rejected Mother's claim that her income should have been adjusted "to a 60% disability amount."

{¶ 28} Regarding the fees for counseling services, the court found that it seemed that Mother has been solely responsible for scheduling appointments with Prigg and then

communicating the appointment times to Father, but that some of the appointment times were during Father's parenting time and were scheduled without prior consultation with him. The court noted that, on December 6, 2016, Father had requested that appointments be scheduled only during Mother's parenting time, but notwithstanding this request, appointments "continued to be scheduled in the same manner for months between Mother and the counselor, leading to more missed appointments, and more fees associated with those missed appointments." Although Mother argued that having to pay for the missed counseling sessions was "manifestly unfair" to her, the court found that these unnecessary fees could have been avoided by better communication about scheduling and providing more advanced notice of the sessions to Father, both of which were Mother's responsibility.

{¶ 29} Finally, regarding Mother's parenting time, the court determined as follows:

Pursuant to the Standard Order of Parenting Time, Mother was to have visitation with the child on Memorial Day in 2017. Father testified that Mother did have the child that day, while Mother states that she did not. Mother also believes that she should have had the child the weekend preceding Memorial Day from May 26th through May 28th, which Father asserts was his weekend for parenting time. When alternating weekends from April 7th, if the child's spring break schedule was as Mother testified to, and Mother received the child from April 7th through the 9th, as Father testified to, the weekends of April 14, 2017 and May 26, 2017 would have been Father's for visitation.

In relation to the mid-week parenting time on April 12, 2017, May 24,

2017 and January 3, 2018, the Court finds that Mother failed to present clear and convincing evidence that she did not receive parenting time on those dates. Mother testified that she did not receive her ordered visitation on those dates. Father testified that Mother did have the child on those dates, and also kept the child overnight on Wednesday, May 24, 2017. Mother did not present any independent evidence to prove that she did not receive the child on those dates.

According to the Standard Order, in an odd numbered year, Father shall have the child from 9:00 a.m. the day after school recess * * * until 9:00 p.m. December 24 and Mother shall have the child from 9:00 p.m. December 24 through 6:00 p.m. January 1. In 2017, it appears from Plaintiff's Exhibit 17 that the child was out of school from December 22, 2017 through January 8, 2018. Thus, Mother should have had the child from December 24, 2017 through January 1, 2018. This would appear to make January 5, 2018 through January 7, 2018 Father's weekend for visitation.

The Court finds that Mother failed to meet her burden of proof in showing father to be in contempt of the prior Court ordered parenting time by clear and convincing evidence. Mother failed to prove by clear and convincing evidence that she was entitled to Court Ordered parenting time during the dates alleged in her motions, and that Father refused said parenting time. Additionally, it appears that the parties have significantly deviated from the parenting time schedule outlined in the Court's Standard

Order of Parenting Time, particularly in relation to the pick up and drop off times, as well as locations.

Further, although Mother testified that she never received any "make up" visitation for purported missed visits, Mother's own testimony suggests that she has had the child well in excess of the time granted to her under the Court's standard order of parenting time. Mother testified that she receives the child on Wednesdays and Thursdays and keeps the child overnight on Wednesdays, despite the Standard Order granting her visitation on Wednesdays only, from 6:00 pm to 9:00 pm. Mother also testified that she keeps the child overnight on Sundays and brings him to school on Monday following her weekend visitation, despite the Standard Order dictating that Mother's weekend visitation ends at 6:00 pm on Sunday. Mother also indicated that she had the child for multiple weeks straight on an occasion due to Father's work. Thus, in addition to a lack of clear and convincing evidence that Father denied her parenting time as ordered, Mother's own testimony suggests that she has exercised parenting time that exceeds the time granted to her in the Court's Standard Order of Parenting Time.

{¶ 30} Mother appeals from the juvenile court's judgment, raising four assignments of error. Father did not file a brief in response.

{¶ 31} Mother's first assignment of error states:

THE TRIAL COURT DID NOT ERR IN ORDERING THAT FATHER'S TOTAL GROSS INCOME SHOULD BE RE-CALCULATED TO

INCLUDE HIS ANTICIPATED BONUSES AND THAT THE SUPPORT WORKSHEET SHOULD BE ADJUSTED ACCORDINGLY.

**{¶ 32}** Since Mother's first assigned error does not direct our attention to any error by the juvenile court, we need not address it.

**{¶ 33}** Mother's second assignment of error states:

THE TRIAL COURT ERRED IN IGNORING FATHER'S AFFIRMATIVE DUTY CREATED VIA COURT ORDER TO NOT ONLY PAY HALF OF THE MINOR CHILD'S COUNSELING COSTS, BUT ALSO TO ENSURE THAT HIS SON WAS ATTENDING HIS COURT-APPOINTED COUNSELING SESSIONS.

**{¶ 34}** With respect to contempt, this Court has noted:

Courts have certain inherent powers to ensure "the orderly and efficient exercise of justice * * *." (Citations omitted). *Zakany v. Zakany*, 9 Ohio St.3d 192, 194, 459 N.E.2d 870 (1984). These powers include "the authority to punish the disobedience of the court's orders with contempt proceedings." (Citations omitted.) *Id.*

"Civil contempt is a remedy whereby an aggrieved party to a lawsuit can enforce a civil remedy and thereby protect its rights. * * * A finding of civil contempt requires clear and convincing evidence that the alleged contemnor has failed to comply with the court's prior orders. * * * In order to be clear and convincing, evidence must leave the trier of fact with the firm conviction or belief that the allegations involved are true. *Cross v. Ledford*, (1954), 161 Ohio St. 469, 53 O.O. 361, 120 N.E.2d 118." (Citations omitted.)

*Moraine v. Steger Motors, Inc.,* 111 Ohio App.3d 265, 268, 675 N.E.2d 1345 (2d Dist.1996).

> We review trial court orders in contempt cases for abuse of discretion. *State v. Chavez-Juarez*, 185 Ohio App.3d 189, 2009-Ohio-6130, 923 N.E.2d 670, ¶ 56 (2d Dist.). "A prima facie case of civil contempt is made when the moving party proves both the existence of a court order and the nonmoving party's noncompliance with the terms of that order." (Citations omitted.) *Wolf v. Wolf,* 1st Dist. Hamilton No. C-090587, 2010-Ohio-2762, ¶ 4. *Accord Hoagland v. Hoagland*, 2d Dist. Miami No. 2014-CA-30, 2015-Ohio-2426, ¶ 6. "The burden then shifts to the nonmoving party to establish a defense for its noncompliance." *Wolf* at ¶ 4.

*Streidl v. Streidl*, 2d Dist. Montgomery No. 27165, 2017-Ohio-403, ¶ 25-27.

**{¶ 35}** Mother directs our attention to the May 31, 2016 magistrate's decision and Judge's Order, which stated in pertinent part that "Father and Mother shall cooperate[ ] to enroll the child in counseling and shall each follow the recommendations of the counselor until further Court Order. The parties shall equally divide the costs for the counseling." Mother argues that the juvenile court incorrectly based its decision on the fact that Father "may not have been told by Mother when the child's counseling sessions were," but the order did not state "that it was Mother's duty to be the personal secretary of the Father." Mother argues that Father showed his disregard for the court's order and for his child's mental health by sending an email to the counselor indicating his intention to withdraw his participation in counseling; "Father outright withdrew from *cooperating* on the court order." Mother also asserts that it was "only fair and equitable" that Father pay

for the no-show appointments caused by his carelessness.

{¶ 36} As noted above, Mother testified that Father "withdrew his participation from counseling," citing Exhibit 16, an email from Father to the counselor's office. Consistent with Father's testimony, Exhibit 16 provided:

> To avoid any confusion with [G.D.B.'s] mother, I would appreciate if you would schedule [G.D.B.'s] appointments for Wednesday evenings around 6pm. This is the time allowed for [Mother] to have visitation with [G.D.B.] per the court order which states her visitation time is from 6pm-9pm every Wednesday. I do not want to cause any conflict or confusion for you and your patients. Thanks for your understanding.
>
> [Father]

{¶ 37} Mother's Exhibit 21 (a chart of G.D.B.'s appointments) reflected seven missed appointments and one no-show, two of which occurred before December 6, 2016. Mother testified that she scheduled G.D.B.'s counseling, took him, and paid through her insurance. Only Mother's name and address appeared on the Healing Waters account (Exhibit 20). Although Mother asserted that she and Father had both signed a contract with Prigg, she failed to produce it. While Mother further asserts that Father failed to cooperate as ordered by the court, she also failed to do so by scheduling the appointments without first consulting Father and then expecting him to meet her schedule, often at the last minute. To the extent that Mother asserts that Father failed to ensure the child's participation in counseling, Exhibit 16 reflects that he emailed the counselor asking to schedule the appointments during Mother's parenting time to avoid confusion, since Mother alone scheduled the appointments. We conclude that the juvenile court

reasonably required Father to pay his share of the services G.D.B. actually received, but not for "no-show" appointments that were scheduled by Mother. Mother's second assignment of error is overruled.

{¶ 38} Mother's third assignment of error states:

THE TRIAL COURT ERRED BY FAILING TO ADJUST MOTHER'S INCOME TO SIXTY PERCENT DISABILITY AMOUNT DUE TO HER MEDICAL ISSUES.

{¶ 39} This Court's remand was limited to the issues raised in Father's motion for child support and Mother's contempt motions of March 31, 2017; April 26, 2017; and June 22, 2017. Although Mother objected that the court's failure to adjust her income to "60% disability amount," her medical issues and any adjustment to her income based on those issues were not properly raised by Mother at the hearing and are not properly before this Court. Mother's third assignment of error is overruled.

{¶ 40} Mother's fourth assignment of error states:

THE TRIAL COURT ERRED IN DENYING MOTHER'S MOTIONS TO SHOW CAUSE REGARDING PARENTING TIME BECAUSE MOTHER DID PRESENT CLEAR AND CONVINCING EVIDENCE, WHICH THE MAGISTRATE IGNORED.

{¶ 41} Mother asserts that she provided clear and convincing evidence that Father should be held in contempt for denying her parenting time on several separate occasions. She argues that she provided clear and convincing evidence that Father had violated the visitation outlined in the standard order of parenting time, which was unrelated to the parties' agreement to deviate from the standard order in other respects.

{¶ 42} Mother asserts that, with respect to Wednesday April 12, 2017, she presented evidence that she was at the set pick-up location (Chick-fil-A), and Father did not show up.   She argues that her first weekend of parenting time for the year began January 6, 2017.   She asserts that "Father's lack of knowledge as to the provisions in the Order is substantially interfering with Mother's parenting time, causing unnecessary problems."   Mother also asserts that she was entitled to have the child Memorial Day weekend 2017, and that she missed additional parenting time in January 2018.   As we noted above, the remand and hearing were limited to Mother's show cause motions filed on March 31, 2017; April 26, 2017; and June 22, 2017, although the juvenile court apparently considered the January 2018 parenting time.

{¶ 43} The Standard Order of Parenting Time provides:

Parents are encouraged to agree on a fair *written* parenting time schedule that fits their circumstances and their children's lives, with the following serving as a schedule when the parents cannot agree.   The parents may change this schedule by agreement. * * * Each parent has a duty to facilitate and encourage the other parent's parenting time with the children.

1.   WEEKENDS:   The non-residential parent shall have parenting time on alternate weekends from Friday at 6:00 p.m. to Sunday at 6:00 p.m. * * *

2.   WEEKDAY:   The non-residential parent shall have parenting time from 6:00 p.m. to 9:00 p.m. each Wednesday evening or another weekday evening by agreement * * *.

3.   HOLIDAYS:   The father shall have the children on the holidays in Column 1 in odd-numbered years and the holidays in Column 2 in the even-

numbered years.  The mother shall have the children on the holidays in Column 1 in even-numbered years and the holidays in Column 2 in odd-numbered years:

| Column 1 | Column 2 |
|---|---|
| Martin Luther Kind, Jr. Day | President's Day |
| Easter Sunday | Memorial Day |
| Fourth of July | Labor Day |
| Beggar's Night (6:00 to 9:00 p.m.) | Thanksgiving Day |

Parenting time shall be from 9:00 a.m. the day of the holiday until 9:00 p.m. * * * When the holiday falls on a Monday immediately following a non-residential parenting time weekend, the non-residential parent shall be entitled to keep the children continuously from 6:00 p.m. Friday to 6:00 p.m. Monday.

* * *

5.  CHRISTMAS BREAK:  In all even-numbered years, the mother shall have the children from the day school recesses * * *, until 9:00 p.m. December 24 and the father shall have the children from 9:00 p.m. December 24 though 6:00 p.m. January 1.   In all odd-numbered years the reverse shall apply.

* * *

7.   SPRING BREAK:   In odd-numbered years the father shall have all the children for the spring break from school, starting at 9:00 a.m. the day after school recesses to 6:00 p.m. the Sunday before school resumes. The

Mother shall have the children for spring break in the even-numbered years.

* * *

* * *

15.  TRANSPORTATION:  The non-residential parent has the responsibility for transportation of the children to and from their home for parenting time with them * * *.

(Emphasis added.)

{¶ 44} In 2016, (an even-numbered year), pursuant to the standard order, Father should have had the child through January 1, 2017, supporting Mother's assertion that the weekend of January 6-7, 2017, was her first parenting weekend of the year. Counting alternating weekends from there, Mother would have been entitled to parenting time on the weekend of April 14-16, 2017, as well as the weekend of May 26-28, 2017, including Memorial `Day.   It is clear, however, that the parties did not follow the standard order as written regarding visitation.   Mother did not produce a written agreement entered into by both parties separate from the standard order.   The parties have altered drop-off and pick-up locations repeatedly, as well as the lengths of Mother's parenting time.   For example, Mother testified that she had the child "the entire span" of September 27-November 14, 2017, and that she kept the child overnight on Wednesdays. Moreover, pursuant to the standard order, Mother was responsible for providing transportation during her parenting time by picking up the child at Father's home and returning him there, and she did not present any evidence that she attempted to do so on the occasions in question.

{¶ 45} As the juvenile court noted, Father's failure to comply with any separate

-22-

agreement between the parties was not a violation of the court's standard order of parenting time. The Chick-fil-A receipt merely established that Mother was at Chick-fil-A in the afternoon on April 14, 2017, not that Father was required to drop the child off at that time for her weekend visitation. Father testified that he had the child for spring break in 2017, consistent with the standard order. Mother testified that spring break occurred from March 19, 2017 (a Sunday) to April 4, 2017 (a Tuesday), which would have been an unusual time period (17 days). Mother's assertion in her brief that the parties' deviation from the standard order was not an issue herein, but that Father's failure to comply with the standard order *was* the issue, defies logic. Based upon the parties' significant deviations from the standard order with respect to Mother's visitation, the juvenile court did not abuse its discretion in concluding that she had not proven that Father was in contempt. Mother's fourth assignment of error is overruled.

{¶ 46} Having overruled Mother's assigned errors, the judgment of the juvenile court is affirmed.

. . . . . . . . . . . .

TUCKER, P.J. and WELBAUM, J., concur.

Copies sent to:

James Kirkland
Ellen Weprin
Hon. Helen Wallace